JONES v. WAREHOUSE CO.

(Filed May 26, 1905.)

*Verdict—Negligence—Master and Servant—Assumption of Risk—Questions for Jury—Dangerous Methods Adopted.*

1. This court has no power to consider the question of setting a verdict aside as against the weight of evidence unless it clearly appears that there was no evidence to sustain the finding.

2. Negligence is a want of ordinary care and a failure to exercise that care which a man of ordinary prudence would have exercised under the circumstances. It is a failure to perform some duty imposed by law.

3. Negligence is a mixed question of law and fact and it is impracticable for the court, as a matter of law, to say whether or not there is negligence, except where the facts are admitted and no reasonable controversy can arise as to the inferences to be drawn therefrom.

4. In an action by an employee to recover damages for injuries sustained in replacing a belt while the machine was in motion, as ordered by his employer, it is a question to be decided by the jury whether replacing the belt while the machine was in motion was unsafe to such an extent that an ideal prudent man under similar circumstances would direct his employee to do so.

5. Where an employer fails to perform its duty and furnish the employee with safe and suitable methods of doing the work, the employee will not be held to assume the risk in undertaking to perform a dangerous work, unless the act itself is obviously so dangerous that in its careful performance the inherent probability of injury is greater than that of safety, or unless it is a danger ordinarily incident to the employment, or unless obvious, or one which the employee may discover by the exercise of ordinary care.

6. Both the employer and employee must exercise that degree of care under the circumstances and in the condition in which they are found which the ideal prudent man would do.

7. Where a change is made in the method of operating a machine after the employment has been accepted, it is a question for the jury to say whether the increased hazard is so obvious that a man of ordinary prudence under like conditions would know and appreciate the danger which extends to the continued employment.

Defendant's petition to re-hear. For former opinion, see 137 N. C., 337.

*Lindsay Patterson, R. D. Reid, Pou & Fuller, Watson, Buxton & Watson,* and *Winston & Bryant* for the petitioner. *Manly & Hendren* in opposition.

CONNOR, J. In view of the large amount involved and the number of exceptions in the record presenting many interesting questions, we were willing to re-hear this case. It was ably argued by counsel upon full and exhaustive briefs and we have, with the aid thereof, carefully re-examined the entire record. To the argument pressed upon us that the plaintiff was not injured in the manner testified to by being caught in the belt of the machine and thrown against a post, we can only say, in the light of the testimony and the charge of the court, the jury have found in accordance with his allegation. He swears positively that he was injured in that way. Two witnesses, Burgess and Wilson, testified that they saw him as and immediately after he was injured. The credibility of the witnesses was entirely for the jury. The learned and careful judge who tried the case and heard the entire evidence, did not think it his duty to set the verdict aside as being against the weight of the evidence. We have no power to consider the question unless it clearly appears to us that there was no evidence to sustain the finding. Taking the fact to be as found by the jury in this respect, we have this case: Plaintiff alleges that he was employed eight weeks before the accident by defendant company, and that about four weeks before the accident was put to work at a machine called the "nap-

per." That attached to the machine was a pulley, run by the belt connected with the shafting overhead. On the inner or lower side of the machine was a small pulley which drove a fan and was run by a small belt. That the belt on this small pulley would sometimes slip off, making it necessary to replace it. He was in the habit of stopping the machine to replace the belt. Some three or four days before the injury, the superintendent told him to replace the belt while the machine was in motion. That on one occasion, the machine being stopped to replace the belt, Mr. Krantz, superintendent, said with some emphasis, "Do not stop that machine to put the belt on." He walked up, took hold of the shifter, put the idle belt on the pulley and started the machine up. Plaintiff told him that it seemed dangerous to do that; he said, "there is no danger in it at all." Plaintiff did that way the next time it came off. Did it two or three times. On the 2nd of July, at about four o'clock in the morning, plaintiff being at work at the machine, the belt came off and he undertook to put it on while the machine was in motion. As he did so, his finger was about to be caught. He jerked his hand away and the large driving belt that went overhead caught his arm, his sleeve, and jerked him around over the pulley and hurled him against the post. Struck the smaller part of his back. That he was putting the small belt on in that way by the command of the superintendent. That, if he had stopped the machine to put on the belt as he had been accustomed to do before the superintendent instructed him otherwise, there would have been no danger whatever. He says that he could see the pulley and understand the location and operation thereof. He further says that it was perfectly plain to him that if he caught his hand under that belt, he would be hurt, and that he was always careful to keep his sleeve from going under it, because he could see that it was dangerous—knew that it was dangerous. There was other testimony on behalf of the plaintiff of the same character.

There was a great deal of testimony directed to the controversy in regard to the allegation of the defendant that plaintiff was injured by falling from a truck. In the light of the finding by the jury, this becomes immaterial.

It is conceded by the plaintiff and was so stated by His Honor that the machine which was being operated was standard in make and quality and had no defect. We attach no importance to the suggestion that the small pulley should have been grooved. The controversy was narrowed down to the single question whether the defendant had imposed upon the plaintiff the duty of operating the machine in a dangerous manner, and if so whether he had assumed the risk incident to such danger or was guilty of contributory negligence. The question is thus stated by defendant's counsel: "If plaintiff was injured by the belt accident, does his own testimony show that the injury was caused by his own negligence and not by any negligence of the defendant, or that it was caused by the danger incident to his employment? Of course he had knowledge of such danger and of which he assumed the risk. All other questions are incident and subordinate to this." His Honor instructed the jury as follows: "The act upon which the plaintiff relies, and which he alleges was negligence, is that the defendant, through its officers, required him to do certain work in a manner which was not reasonably safe, and that in consequence thereof, while endeavoring to follow the requirements of the defendant, he was caught by a belt and injured. If, therefore, becomes material to inquire what is negligence. Negligence is a want of ordinary care, a failure to exercise that care which a man of ordinary prudence would have exercised under the circumstances. It is a failure to perform some duty imposed by law. The law imposes upon the master the duty of using ordinary care to provide for the servant reasonably sound and safe appliances and machinery, and a reasonably safe place and method to do his work, and on

entering into employment the servant has a right to assume that these duties have been performed, and may, without blame, act upon this assumption until some defect becomes so apparent that it may be discovered by the exercise of ordinary care. The master is not required to furnish the best machinery and appliances, nor is he required to provide the safest place or methods, but such as are reasonably safe. The law also requires the servant to exercise ordinary care for his own safety. It is also a part of the contract of employment that the servant assumes the ordinary risk of his employment and also the risk incident to dangerous work or dangerous methods of work if they are obvious." He properly instructed the jury in regard to the burden of proof and proximate cause. Upon the third issue, His Honor instructed the jury as follows: "The burden upon this issue is upon the defendant to satisfy you by the greater weight of the evidence that the plaintiff assumed the risk of his injury. It becomes material then to inquire what is meant by assumption of risk. It is a doctrine that grows out of the relationship of master and servant and is based upon the contract between them. As I have before stated, the law imposes certain duties upon the master and certain duties upon the servant, and in addition to those mentioned it becomes a part of the contract of employment that the servant will assume the risk of those dangers and injuries ordinarily incident to the employment, and also those dangers not ordinarily incident to the employment, but which are obvious or which could be discovered by the exericse of ordinary care. If the risk is not ordinarily incident to the employment or is not obvious or could not be discovered by the exercise of ordinary care, it is not one of those risks which enter into the contract and which the servant assumes. In passing upon the nature of the risk you would consider the intelligence of the plaintiff, his opportunities to discover the risk, the information he had as to the danger, and all the circumstances. (The

court here fully stated the contentions of the plaintiff and the defendant upon this issue.)

"If you find from the evidence that the plaintiff had worked at this napper machine for four weeks, and that the danger of being injured if he was caught in the driving belt and pulley attached to it was open and obvious and known to him, and that after such knowledge he continued to work at said machine, you will answer the third issue 'Yes.' "

"If you find from the evidence that the plaintiff knew of the danger of attempting to replace the belt on the pulley while the machine was in operation and appreciated the danger and continued to work at said machine and attempted to replace the belt when it slipped off of the pulley, then the plaintiff assumed the risk and you would answer the third issue 'Yes.' "

"Assumption of risk does not mean that in all cases where the defendant has knowledge of the defects of dangerous machinery and goes on with the work, that he assumes the risk, but the law is that where the defendant fails to perform its duty and furnish the plaintiff with safe and suitable methods of doing the work, the plaintiff will not be held to assume the risk in undertaking to perform a dangerous work unless the act itself is obviously so dangerous that in its careful performance the inherent probability of the injury is greater than those of safety, or unless it is a danger ordinarily incident to the employment, or unless obvious, or one which the servant may discover by the exercise of ordinary care."

There were a number of special requests on behalf of the defendant, all based upon the theory that if certain facts were found, His Honor should instruct the jury, as a matter of law, that plaintiff could not recover either by reason of the failure to show any negligence on part of the defendant or assumption of risk on his part. We are of the opinion that His Honor properly presented to the jury the principles

by which they were to be guided in arriving at a correct verdict. His Honor properly said to the jury, after stating to them the duty which defendant owed the plaintiff, "Negligence is a want of ordinary care and failure to exercise that care which a man of ordinary prudence would have exercised under the circumstances. It is a failure to perform some duty imposed by law." This definition is in strict accordance with the best approved formula found in the text books and adopted by the courts.

The answer to the allegation that there was such negligence is to be arrived at, first, by finding the facts, and, secondly, by drawing such inferences therefrom as are reasonable and natural. This is so where there is any controversy and is peculiarly a matter for the jury. This court has long since abandoned the theory that negligence is a question of law and adopted the only rational and workable theory that it is a mixed question of law and fact. It is impracticable, if not impossible, for the court, as a matter of law, to say whether or not there is negligence except where the facts are admitted and no reasonable controversy can arise in regard to the inferences to be drawn therefrom. We have so frequently repeated this proposition that it is unnecessary to cite authority. We think that His Honor correctly instructed the jury in this respect. To replace the belt while the machine is standing still is undoubtedly safe. To replace it while it is in motion is to some extent unsafe. Whether to such an extent that an ideal prudent man under similar circumstances would direct his employee to do so, is peculiarly a question to be decided by the jury. We also think that His Honor correctly instructed the jury upon the third issue, as he properly said to them if they found that the danger was open and obvious and known to him, that he appreciated the danger and continued to work at the machine and replace the belt, when it slipped off the pulley while in motion, they would answer the third issue "Yes." This we

think in strict accord with the definition of assumption of risk. He further said to the jury that where "the defendant failed to perform its duty and furnish the plaintiff with safe and suitable methods of doing the work, plaintiff will not be held to assume the risk in undertaking to perform a dangerous work unless the act itself is so obviously dangerous that in its careful performance the inherent probability of the injury is greater than those of safety."

As we said in *Marks v. Cotton Mills,* at this term, the same measure of duty is imposed upon the plaintiff as upon the defendant. Both must exercise that degree of care under the circumstances and in the condition in which they are found which the ideal prudent man would .do. If the defendant fails to do so in the light of the standard which the law sets to define his duty and such failure is the proximate cause of the injury he is liable to an action—on the other hand, if the plaintiff fails to exercise the same degree of care under the same circumstances and with the same light before him and his failure is the proximate cause of his injury, the law attributes the injury to such failure and he cannot recover. The standard of duty in each case is ordinary care, that is, such care as a man of ordinary prudence, under similar circumstances, would exercise. This we understand to be the conclusion to which, after long and anxious thought, the courts have come in administering the law in such cases. There was undoubtedly testimony in this case which would have fully justified the jury in answering the issues in favor of the defendant. They have, however, accepted the view of the plaintiff's testimony and under the instruction of a very learned and careful judge, have found a verdict which we cannot disturb. What the rights may have been, if at the time of entering upon the service, the method of replacing the belt had been known to him and the service accepted with full knowledge thereof, we are not called upon to say. As we said in *Marks v. Cotton Mills,* it is not to be required

that employees in operating dangerous machinery shall immediately surrender their employment upon a change being made in the method of operating or cleaning machinery adopted after the employment has been accepted. Such changes must be made after reasonable notice to the employees, and with an opportunity on their part to fully understand them and appreciate the danger incident thereto. It is always a question for the jury whether in such cases the increased hazard is so obvious that a man of ordinary prudence, under like conditions, would know and appreciate the danger which extends to the continued employment. We have also examined the other exceptions in regard to the expert evidence and, while as conceded by plaintiff's counsel, the questions are not so accurately framed as might be desired, we do not think that the form in which they are put was calculated to mislead the jury to the prejudice of the defendant. Upon a full re-examination of the entire case, we find no such error as to justify a reversal of our former decision. As stated by counsel, the case is a singular one in many aspects. The plaintiff was seriously and permanently injured. It may be in the manner contended by defendants, the jury have found otherwise, and that, so far as the duty and power of this court are concerned, must be assumed to be correct.

Let the petition be dismissed.

Petition Dismissed.