DOUGLASS STEPHENS, ADMINISTRATOR OF OTTO STEPHENS, v. BLACK-
WOOD LUMBER COMPANY AND CANEY FORK LOGGING RAILWAY
COMPANY.

(Filed 27 January, 1926.)

**1. Negligence—Explosives—Commensurate Care.**

Those who use high explosives in the conduct of their business are
held to a degree of care in its handling, storage or use, commensurate
with the danger of such use, and upon failure thereof, are liable in dam-
ages for an injury inflicted on trespassers or licensees when the proxi-
mate cause thereof.

**2. Same—Evidence—Children—Nonsuit.**

*Held,* evidence that the defendant stored large quantities of blasting
powder on its own premises in an old mill used for the grinding of
flour, where children frequently went, to be used in the construction
of a lumber railroad in connection with its business, and that the mill
with the powder stored therein was left at intervals unlocked and the
powder accessible, defendant is presumed to have anticipated that an
injury might thereby be inflicted upon one of the children visiting the
mill; evidence is sufficient to be submitted to the jury to sustain allega-
tion of negligence, and recovery may be had.

**3. Same—Trespasser—Licensee.**

Where an owner of an old mill has stored therein blasting powder, for
the purposes of its lawful business, and the mill was accessible to chil-
dren who frequently went there, it is liable in damages for an injury to
one of these children, whether a licensee or trespasser, proximately
caused by its negligent act.

**4. Same—Nuisance.**

It is not a nuisance for one to store blasting powder in quantity on its
own premises to be used in prosecuting its business; liability for an injury
caused by the explosion of powder thus stored is to be determined upon
the doctrine of negligence, and not of nuisance.

**5. Same—Intervening Cause—Proximate Cause.**

Where the defendant has stored blasting powder in quantity at an old
mill used for grinding flour for the public, on its premises, for its lawful
business, where children frequently came, and one of them has taken
some of the powder several miles from the premises and several hours
later has playfully ignited the powder, knowing its explosive quality
when exposed to fire, the negligence of the defendant in leaving the
powder accessible on its own premises is not the proximate cause of the
injury, the act of the boy being an independent, intervening cause, for
which the defendant may not be held responsible.

**6. Negligence—Questions for Jury—Instructions—Courts.**

In an action to recover damages arising from the negligence of the
defendant, the question presented is usually a mixed one of law and
fact for the jury to determine as to the facts, under a proper instruction
from the court.

APPEAL by plaintiff from *Finley, J.,* at May Term, 1925, of JACKSON. Affirmed.

Civil action to recover damages for wrongful death. From judgment as in case of nonsuit, upon motion of defendants, at close of plaintiff's evidence, plaintiff appealed.

*W. R. Sherrill, A. W. Horn, Geo. B. Patton* and *G. C. Poindexter* for *plaintiff.*

*A. Hall Johnston* and *Alley & Alley* for *defendants.*

CONNOR, J. Plaintiff's only assignment of error, upon this appeal, is based upon his exception to the order allowing defendant's motion, at the close of plaintiff's evidence, for judgment as in case of nonsuit. C. S., 567.

Evidence offered by plaintiff in support of the allegations of his complaint, tends to show that Otto Stephens, son and intestate of plaintiff, was returning home from services at John's Creek Church in Jackson County about 9 o'clock, on the night of 18 August, 1921, accompanied by several boys of about his age; that while walking along the road, with these boys, he took some powder from his pocket, and placed it in an envelope; that one of his companions struck a match, and attempted to ignite the powder but failed to do so, because the match did not burn; that thereupon he procured from another of his companions a match, saying that he would light the powder himself; he struck the match and ignited the envelope, which he was holding in his hand; there was a flash of the powder in the envelope; his clothing caught fire; the flames spread quickly over his body, causing the powder in his pocket to explode, with the result that he was so badly burned that he died the next day at 5 p. m. from his injuries.

Several of his companions, as witnesses for plaintiff, testified, without objection by defendants, that Otto Stephens told them that he got the powder at the mill. There was evidence that he left his home, alone, during the afternoon, about 4 o'clock, to go to a neighbor's house to ask his older brother who was visiting there to go with him to the services at the church that night; that he stopped for a few moments at the mill on the land of defendant, Blackwood Lumber Company, and that soon after leaving the mill, he told his cousin, George Stephens, whom he met a short distance from the mill, that he had some powder. George, who was 14 years of age at the time, accompanied Otto to the church, which was three miles from the mill, and was with him at the time he was fatally injured.

There was evidence that defendants, in 1921, were conducting a lumber and logging business in Jackson County; that in the conduct of their

business, they operated a railroad which ran about 75 yards from plaintiff's residence; that during August, 1921, defendants were engaged in the construction of logging roads to enable them to get logs from the mountains to their railroad, and thence to their sawmills; that in the construction of said logging roads, they used dynamite caps and blasting powder; an old mill was located on the land of defendant, Blackwood Lumber Company, about a quarter of a mile from the home of plaintiff, where his son, Otto, lived; there was a waterfall at this old mill, and children of the community were in the habit of going there to play. This mill had been maintained for many years, and was used by the people residing in its vicinity to grind corn and wheat. If the miller was present, he would grind for the people; if not, they would grind for themselves. The only means of closing the door to the millhouse was a button, with a nail through it, on the inside of the door, which anyone could turn; there was no lock on the door. There was evidence that blasting powder was stored in the millhouse by defendants. This mill was about three miles from John's Creek Church, near which plaintiff's intestate was injured by the explosion of the powder, which he took from his pocket and placed in the envelope and then ignited with a match.

Plaintiff's intestate was about 14 years of age at the time of his injury and death, but there was evidence that he was the size and had the mental development of a boy of 8 or 10 years of age; that he sought the company of children younger than himself and preferred to play with them rather than with children of his own age. He had attended school and was in the third or fourth grade. He sometimes accompanied his father, when hunting with a gun; had himself shot a gun several times, when with his father, and knew that powder would burn.

From this evidence the jury would have been justified in finding that defendants had stored blasting powder, to be used in the construction of logging roads, in the old millhouse, that the door to this mill was not locked or securely fastened on the afternoon when plaintiff's intestate went there; that he entered the millhouse and procured there some of the powder which defendants had stored therein and that this was the powder by the explosion of which he was fatally injured, when he ignited the envelope with a match, while returning from the church three miles distant from the mill. There was evidence also that children, including plaintiff's intestate, were in the habit of going to the mill to play about the premises and in the old millhouse; that plaintiff's intestate was about 14 years of age and smaller in size than most boys of that age; that he knew that the powder which he got at the mill would, when brought in contact with fire, explode. There was no evidence, however, as alleged in the complaint, that the powder in the mill was in cans

which were open and exposed or that plaintiff's intestate went to the mill, on the afternoon of 18 August, 1921, to play. He went alone, and remained there only a short time.

The court was of opinion, that upon all the evidence, the jury would not be justified in finding that the death of plaintiff's intestate was caused by the negligence of defendants, and therefore sustained their motion for judgment as in case of nonsuit, and dismissed the action. Plaintiff contends that in this there was error.

Two questions are presented by this contention. First, do the facts which the jury would have been justified in finding from the evidence, constitute negligence on the part of defendants? Second, if so, was such negligence the proximate cause of the death of plaintiff's intestate?

The essential elements of actionable negligence are—(a) failure to exercise commensurate care, involving (b) a breach of duty, resulting in (c) damage to the plaintiff. Joggard on Torts, ch. 12, sec. 246. The duty, the violation of which gives rise to a cause of action, is to exercise due care under the circumstances. There is no allegation or evidence in the instant case of the existence of any relation between defendants and plaintiff, out of which any peculiar duty—as in the case of master and servant—arose with respect to the conditions at the place where the powder was stored. Defendants had stored blasting powder, a legitimate agency for the prosecution of a lawful purpose, in a building on their own land. This blasting powder was of a highly explosive nature, when exposed to fire; unless so exposed, it was harmless. The building in which the powder was stored, was often visited by the people residing in its vicinity for the purpose of having corn and wheat ground there into meal and flour. Children of the community frequently went there to play. Defendants had the right to store their powder in a house upon their land, but in view of the explosive nature of the powder, defendants owed a duty to those who might go into the mill for the usual and customary purposes with respect to the manner in which said powder was stored, to the end that those who might go into the mill should not suffer harm, by reason of the explosive nature of the powder. This duty was to exercise for the protection of such persons, whether adults who went there to have corn or wheat ground, or children who went there to play, a degree of care commensurate with the dangerous character of the powder, such dangerous character being due to the very great probability, if not certainty, that it would explode, if brought in contact with fire, and injure persons nearby.

This Court in *Brittingham v. Stadiem*, 151 N. C., 299, has approved the doctrine stated in *Mattson v. R. R.*, 95 Minn., 477, 70 L. R. A., 503, as follows: "The degree of care required of persons having the possession and control of dangerous explosives, such as firearms or dynamite, is of

the highest. The utmost caution must be used in their care and custody, to the end that harm may not come to others from coming in contact with them. The degree of care must be commensurate with the dangerous character of the article." The doctrine was applied to the facts in that case, and defendant was held liable to plaintiff for injuries sustained by plaintiff, while in defendant's store as a customer, caused by the careless handling of a pistol by defendant's son, a boy 12 years of age who was at work in the store for defendant. The negligence of defendant's employee, a boy 12 years of age, in carelessly handling a loaded pistol was imputed to defendant, upon the principle of *respondeat superior.* It will be noted that the injury occurred in the store, to plaintiff who was present as an invitee.

In *Wood v. McCabe,* 151 N. C., 457, *Justice Brown,* writing for the Court, says: "All courts and writers agree that the degree of care required of persons using such dangerous instrumentalities as dynamite in their business is of the highest, and what would be reasonable care in respect to grown persons of experience would be negligence as applied to youths and children," citing 7 A. & E., 411, and *Mattson v. R. R., supra.* In this case defendants were held liable for damages sustained by plaintiff, a boy of 16 years of age, resulting from injuries caused by the explosion of dynamite which he had picked up from the ground, where it had been left by employees of defendant who had been using dynamite in the construction of a railroad. Plaintiff in this case was an employee of defendants, and was engaged in the performance of duties incident to his employment when he was injured. Defendants were held to have been negligent because they employed plaintiff to do dangerous work, without instructing him as to the danger in handling dynamite as he was required to do by defendants.

In *Barnett v. Mills,* 167 N. C., 576, *Justice Allen,* writing for the Court, says: "Where there is evidence from which the jury is justified in finding that dynamite was left by employees of defendant on the ground, or in an uncovered box at a place not enclosed and much used by the public, including children, this would be negligence." Plaintiff, a boy 11 years of age, picked up a dynamite cap, which he found in an open box, or on the ground, near a well, which defendant's employees had been blasting out with dynamite. These employees had left dynamite caps in an open box or on the ground, near the post office in the village of Cliffside. Plaintiff took a dynamite cap home with him, and sometime thereafter, while at play, struck it with a hammer, thus causing it to explode; he was injured by the explosion, and defendant was held liable for damages resulting from the injuries. It was held to be negligence for defendant's employees to leave dynamite in an open box or lying on the ground in a public place, where children were accustomed to play.

Plaintiff, a child, went to the place where the dynamite was negligently left, because other children were there. He did not know what it was. He thought it was an electric wire about 6 inches long.

The principle stated and approved in *Barnett v. Mills, supra,* is cited in *Krachanake v. Mfg. Co.,* 175 N. C., 435, and upon its application to the facts in that case defendant was held liable to plaintiff. There defendant had stored dynamite, to be used by it in blasting, in a small house located within 75 or 100 yards of a main road, running through the village of Acme; this house was visible from the road, and there was a path leading from the road to the house; the house was not enclosed, and the door to it was not locked or nailed up; the dynamite was in two boxes, one of which was open, so that the dynamite was exposed; plaintiff, a boy of 7 years, returning home from school, left the road, went up the path to the house, and finding the door open, entered the house, and took five dynamite caps from the open box, which he carried home with him; upon arriving at his home, he went to the fire to warm, with the dynamite caps in his hand; while standing before the fire, the dynamite caps exploded, injuring his eye. This Court held that defendant was negligent in leaving the ·dynamite exposed in the open box, in an unenclosed house near the public road. In this case plaintiff did not know the dangerous character of the dynamite cap, never having seen one before. It was held that there was no error in the refusal to allow the motion for nonsuit, upon all the evidence in this case.

In *Fanning v. White,* 148 N. C., 541, this Court held that "To store dynamite, being used for a legitimate purpose necessary for the construction of a railroad, on its own right of way, in a shanty with the door open, and the window torn out, affording any person ample opportunity to see the danger, with the warning written or printed on the boxes, cannot violate any duty owing to a person going upon the premises without a license, either express or implied." In that case this Court affirmed a judgment of nonsuit, holding that one storing dynamite on his own premises for legitimate purposes, in boxes, with the word "Dynamite" written or printed on the box containing it, placed in a shanty with the door open, and window torn out, thus affording ample opportunity to see the danger, owes no further duty to a person going upon the premises, without either an express or implied license, and is not liable to him for damages caused by his companions shooting into the shanty and exploding the dynamite, not knowing it was there. *Chief Justice Clark* dissented from the opinion of the Court, emphasizing the facts, however, that defendants had stored in said shanty 1,600 pounds of dynamite, and that there was nothing about the shanty to indicate to the person who shot into the shanty the presence of the dynamite. He

says further that the shanty was located within the corporate limits of the town of Bridgeton, with a population of 300 to 400 inhabitants. He was of the opinion that defendant, upon the facts in that case, was guilty of maintaining a nuisance on its premises and therefore liable for injuries resulting therefrom.

In the instant case, plaintiff's intestate, although a boy 14 years of age, did not go into the millhouse, where the powder was stored, to play as children sometimes did, or to grind corn or wheat, as the people in the community were accustomed to do. However, whether he was an invitee or at least a licensee and not a trespasser was for the jury to determine upon the evidence. There was evidence that the door was not locked or securely fastened, as was the case in *Fanning v. White, supra;* there was no evidence that the powder was in an open box or can, as was the case in *Krachanake v. Mfg. Co., supra,* and as plaintiff in this case alleged in his complaint; plaintiff's intestate knew that the article which he took and put in his pocket was powder, and knew that it would burn or explode, when fire was brought in contact with it. He was not ignorant of the explosive nature of the powder which rendered it dangerous, as was the case with the plaintiff in *Barnett v. Mills, supra,* and in *Krachanake v. Mfg. Co., supra.* He was not an employee of defendant as was the plaintiff in *Wood v. McCabe, supra,* nor a customer of defendant, as was the plaintiff in *Brittingham v. Stadiem, supra.*

Defendants, however, owed a duty to plaintiff's intestate, even if he was technically a trespasser on their premises, of a higher degree than not to wilfully harm him. This is true although he knew that the powder was stored in the mill when he went there and knew its dangerous nature. This duty was to exercise care with respect to the manner in which the powder was stored, commensurate with its known dangerous nature and the probability of an explosion under circumstances which defendants must necessarily have foreseen. As to whether a prudent man, exercising due care, commensurate with the circumstances, would have stored powder, which was of a sufficiently explosive nature to make it a useful instrumentality for blasting purposes, in a quantity sufficient to be used in the work in which defendants were engaged, in an old mill, located as was the mill of defendants, where people of the community, and especially children were accustomed to go, with no means of locking or otherwise securely fastening the door to the mill, so that access could be easily had to the powder, is a question, which, under our decisions, was proper to be submitted to a jury, for them to determine whether or not defendants were negligent upon the facts in this case. In *Jones v. Warehouse,* 138 N. C., 546, it is said: "This Court has long since abandoned the theory that negligence is a question of law, and adopted the only rational and workable theory, that it is a mixed question of law

and fact. It is impracticable, if not impossible for the Court, as a matter of law, to say whether or not there is negligence, except where the facts are admitted and no reasonable controversy can arise in regard to the inferences to be drawn therefrom. We have so frequently repeated this proposition that it is unnecessary to cite authority." While upon a motion for judgment of nonsuit, the facts as the evidence tends to show them to be favorable to the contentions of plaintiff, are admitted, inferences to be drawn from these facts are usually for the jury and not for the court. We must hold in the instant case that there was evidence sufficient to be submitted to the jury upon the first question presented by plaintiff's contention upon this appeal.

"One who stores and keeps gunpowder, dynamite or other explosives upon his premises, under circumstances rendering him guilty of maintaining a nuisance, is liable for all damages resulting from an explosion of such explosives, whether he is chargeable with negligence or not." 25 C. J., 183. There is no evidence in the instant case of any facts or circumstances which make the storing of powder by defendants in their mill a nuisance, rendering defendants liable for all damages resulting from the presence of the powder in the mill.

"One who negligently handles or stores explosives upon his premises is liable for injuries resulting to others by reason of such negligence, and this without regard to the question of whether the storing or handling without negligence under the circumstances would constitute a nuisance." 25 C. J., 185. There is evidence of negligence in this case, but such negligence is not actionable, unless it was the proximate cause of the death of plaintiff's intestate. We are thus brought to a consideration of the second question presented by plaintiff's contention that there was error in sustaining defendant's motion for judgment of nonsuit, to wit: "If so, was such negligence the proximate cause of the death of plaintiff's intestate?"

The injuries to plaintiff's intestate, resulting in his death, did not occur at the mill, or on or near defendant's premises; they occurred near the church, three miles distant from the mill. They did not occur while plaintiff's intestate was in the act of taking the powder and putting it in his pocket at the mill; they occurred at least four hours after plaintiff's intestate had left the mill, and the premises of defendants; plaintiff's intestate did not go to the mill to play or to grind corn or wheat, on the afternoon when he got the powder; the explosion of the powder was not caused by any act of omission or commission of defendants. It was the explosion of the powder and not its presence at the mill or the manner in which it was stored that caused the death of deceased. If the powder had remained at the mill, where defendants had stored it and where they reasonably contemplated it would remain, no harm

would have come to plaintiff's intestate. If plaintiff's intestate had been an adult, no contention could or would be made that his death was caused by the act of defendants, and that defendants are liable to plaintiff for the death of his son and intestate. His death was due to his own wrongful act in taking the powder and carrying it away and to his own carelessness in igniting the envelope in which he had placed the powder while holding same in his hand. The connection between defendant's negligence in storing the powder in the mill, if upon the evidence the jury should find that defendants were negligent as alleged, and the death of plaintiff's intestate was broken by an intervening cause, to wit, the acts of deceased. Unless it can be held that plaintiff's intestate, by reason of his age, cannot be held in law responsible for his acts, in taking the powder and igniting it, plaintiff's contention that the negligence of defendants was the proximate cause of the death of his son and intestate, cannot be sustained.

Otto Stephens, at the date of his death, was 14 years of age; he knew that the powder which he placed in the envelope would explode when fire was brought in contact with it; he struck a match for the purpose of igniting the powder, and ignited it. If one of his companions had been injured by the explosion of the powder, the act of said Otto Stephens, and not the negligence of defendants in storing the powder in the mill, would have been the proximate cause of the injury. In *Lineberry v. R. R.,* 187 N. C., 786, this Court held that where a boy 9 years old was pushed by a companion of about his age, so that he fell beneath a moving train, which was exceeding the speed limit fixed by an ordinance of the town through which the train was passing, and was injured by said train, the proximate cause of the injury was the act of his companion and not the negligence of the railroad company. The railroad company was not liable for damages resulting from the injuries. The opinion in that case, written for the Court by *Justice Clarkson,* is well supported by authority cited therein.

"Notwithstanding the fact that the person injured is a child, nevertheless to impose liability, defendant's act must have been the proximate cause of the injury. So where explosives are wrongfully carried away from the place in which they are stored by children capable of understanding the wrongful nature of their act, the negligence in keeping or storing cannot be regarded as the proximate cause of a subsequent injury to the child or other children by their use, where defendant has done nothing to invite or provoke the act of the child and there is nothing in the circumstances which would cause it to be foreseen." 25 C. J., 187. *Horan v. Watertown* (Mass.), 104 N. E., 464; *Hale v. Tel. & Tel. Co.* (Cal.), 183 Pac., 280; *Perry v. Rochester Lime Co.* (N. Y.), 113 N. E., 529; *Bottorff v. South Const. Co.* (Ind.), 110 N. E., 977;

*Nicolosi v. Clark* (Cal.), 147 Pac., 970; *Jacobs v. R. R.* (N. Y.), 98 N. E., 688; *Carter Coal Co. v. Smith* (Ky.), 191 S. W., 631; *Carpenter v. Miller* (Penn.), 81 Atl., 438.

There is no evidence in this case from which the jury could find that plaintiff's intestate, 14 years of age, although of the size and mental development of a boy 8 to 10 years of age, did not, because of his age or lack of understanding, appreciate the probable effect of his act in taking the powder away from the mill and igniting it, while returning home from the church with his companions. All the evidence is to the effect that he knew and appreciated the inherent qualities of the powder, and that he went to the mill, during the afternoon of 18 August, 1924, for the purpose of getting powder, and not to play; and that he struck the match and ignited the powder in the envelope with full knowledge that it would burn and explode. Herein is the distinction between the instant case and *Barnett v. Mills, supra,* and *Krachanake v. Mfg. Co., supra,* in both of which cases plaintiffs did not know that the articles which they took was dynamite, and explosive. Defendants, while they may have been negligent in the manner of storing the powder in the mill, could not have foreseen that plaintiff's intestate or any other boy in the community would go to the mill, take the powder to a distance of three miles and then ignite it with a match. Their negligence cannot be held the proximate cause of the injury and we must hold that there was no error in sustaining the motion for judgment of nonsuit. The judgment is

Affirmed.