Arnold HASHTANI, Appellee,

v.

DUKE POWER COMPANY, a
corporation of the State of
North Carolina, Appellant.

No. 77–1273.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 10, 1978.

Decided June 14, 1978.

W. Edward Poe, Jr., Charlotte, N.C. (William I. Ward, Jr., Charlotte, N.C., on brief), for appellant.

Robert B. Cordle, Charlotte, N.C. (Norvin K. Dickerson, III, Helms, Mulliss & Johnston, Charlotte, N.C., Tim L. Harris, Castonia, N.C., Harold A. Schuman, Toms River, N.J., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and RUSSELL, Circuit Judge.

DONALD RUSSELL, Circuit Judge.

The plaintiff-appellee, in the company of his twin brother and another companion, determined to climb to the top of a forty-five foot steel tower. The tower consisted of four legs, bound together by steel cross-bars, diagonally placed, and supporting three high-voltage electric transmission lines. When plaintiff's twin reached the top of the tower, after being there for about a minute, he heard a buzzing sound. He looked down and a "big orange flash" blinded him momentarily. When his eyes cleared he saw the plaintiff below balancing on a crossbar on the outside of the tower in an apparent dazed condition and on fire. The plaintiff's other companion was descending the tower at the time. He heard a buzzing sound, looked up and saw a puff of smoke and the plaintiff on fire. The plaintiff was unable to give any account of the circumstances of the accident. He was, however, severely burned and the inference was clear that in some way he had received a very severe shock of electricity either from direct contact with one of the high-voltage lines, or as a result of an arcing of the current from a high-voltage line to the plaintiff's body. This sudden shock of electricity inflicted the severe burns on his body. It was with some difficulty that he was removed from the tower. He was then taken to the hospital where he remained for several months for treatment of his burns. At the time of the accident the plaintiff was fourteen years and two months old and in the eighth grade at school.

Within a year after he became twenty-one, the plaintiff filed this suit to recover for his injuries incurred in the accident against the defendant-appellant, which had erected and maintained the tower under a right-of-way agreement with the landowner. In his complaint, he set forth two theories of liability, one under the attractive nuisance doctrine and the other under negligence generally. At trial, however, the District Court, as it made clear in its order denying a motion by the defendant for judgment in its favor n. o. v., treated "the key issue which was faced and decided at trial; that is, whether the attractive nuisance doctrine is available to the plaintiff on the facts of this case and under the evidence as to the plaintiff's mental and emotional development." As thus framed, the cause was submitted to the jury, which returned a verdict for the plaintiff. From the judgment entered on that verdict, after the denial of defendant's motion for a directed verdict n. o. v., the defendant has appealed. We reverse.

We shall consider first whether the plaintiff made a sufficient showing to permit the submission to the jury of the issue whether the plaintiff was entitled to avail himself of the attractive nuisance doctrine as a basis for recovery. Since this is a diversity case arising in North Carolina, the law of that State is controlling on the scope and application of that doctrine. Under

that law the attractive nuisance doctrine is an exception to the normal rule that the only duty owed a trespasser is to refrain from wilfully or wantonly injuring him.[1] The exception, however, is not available to minors generally;[2] it is limited in its protection to those minors who may be classified as " 'small children' or 'children of tender years.' "[3] And the Courts of North Carolina have given specificity to that term "children of tender years." In the earliest case on the doctrine, it observed that it had "not [found] any [case] in which a boy of 13 years, 'with the usual intelligence of boys of that age,' has been permitted to rely upon the attractive allurements of machinery to children."[4] Subsequently, the North Carolina Court became more specific in its definition of "tender years," declaring that the principle could not "be applied to a child of the age of fourteen or over, at least in the absence of some showing of a lack of the mental development which is ordinarily found in children of that age or of a very exceptional state of facts."[5] Since the plaintiff was more than fourteen years of age at the time of his injury, there could be thus no recovery under the doctrine of attractive nuisance unless he could offer sufficient proof of "a lack of * * * mental development." Accordingly the issue in this aspect of the case resolved itself into a

determination of whether the plaintiff proffered sufficient proof of "a lack of mental development" to warrant jury submission under the doctrine of attractive nuisance.

■ In order to show that "lack of mental development" required for permitting recovery by one fourteen years of age or older by reliance on the attractive nuisance doctrine, it will not suffice that the plaintiff was backward in school or immature.[6] Only if such backwardness can be shown to have been due to some "deficiency of mind" can it be said under North Carolina law to justify the application of the doctrine in a case where the plaintiff is 14 years of age or more. The rationale for such a conclusion was stated in a leading case from another jurisdiction:

"Something was said about his grade in school, but if that was below what it ought to have been, it is not shown that it was by reason of any deficiency of mind. He may not have been studious, he may not have had the benefit of any instruction or assistance at home, or it may have been for various other reasons."[7]

The sole case from North Carolina called to our attention, in which a child over 14 years of age was found to have made a sufficient showing of "lack of mental development" to permit him to avail himself of

1. *Jessup v. High Point, Thomasville & Denton R. Co.* (1956) 244 N.C. 242, 93 S.E.2d 84, 87; *Ford v. Blythe Brothers Company* (1955) 242 N.C. 347, 87 S.E.2d 879, 882–3; *Briscoe v. Henderson Lighting & Power Co.* (1908) 148 N.C. 396, 62 S.E. 600, 606–607, 19 L.R.A., N.S., 1116.

2. *Ibid.*

3. *Dean v. Wilson Construction Company* (1960) 251 N.C. 581, 111 S.E.2d 827, 832, quoting from 38 Am.Jur., Negligence, § 157.

4. *Briscoe v. Henderson Lighting & Power Co., supra,* 62 S.E. at 607.

5. *Dean v. Wilson Construction Company, supra,* 111 S.E.2d at 833, quoting from 65 C.J.S. Negligence § 29(11).

In the Restatement of Torts, Second, § 339, comment c is:

" * * * In the great majority of the cases in which the rule [of attractive nuisance]

* * * has been applied, the plaintiff has been a child of not more than twelve years of age."

However, in the later Appendix to the Restatement, it is stated that the doctrine has been applied in a considerable number of cases where the child was over the age of 13 years.

6. *Stephens v. Blackwood Lumber Co.* (1926) 191 N.C. 23, 131 S.E. 314, 315.

7. *Grube v. Baltimore* (1918) 132 Md. 355, 103 A. 948, 950, L.R.A. 1918E, 1036.

See, also, *Moseley v. Kansas City* (1951) 170 Kan. 585, 228 P.2d 699, 704, to the effect that evidence that plaintiff "has been backward in his work at school is not deemed sufficient to include the child within the doctrine [of attractive nuisance], unless there is a showing that the backwardness in his studies is the result of mental impairment or deficiency."

the attractive nuisance doctrine, is *Graham v. Sandhill Power Co.* (1925) 189 N.C. 381, 127 S.E. 429. That case seems to have turned on the strong medical testimony. An experienced physician testified that the plaintiff "hasn't the mind of a boy over 8 or 10 years old" and that he was "mentally below normal." This testimony was corroborated by evidence "that he [the plaintiff] inherited insanity."

This case is a far cry from *Graham*. The plaintiff's evidence of mental deficiency at the time of his accident, was clearly insufficient to satisfy the test applied by the Court in *Graham* or as established in *Dean* for the application of the attractive nuisance doctrine to one fourteen years of age or over. It is true that the plaintiff failed the first grade but he was regularly promoted thereafter. At the time of the accident he was in the eighth grade, which was one grade ahead of the injured child in *Dean* who had reached the same age as the plaintiff at the time of the former's accident. The fact that his grades were in the C range would not be evidence of any deficiency of mind; such grades might indicate simply a want of application, as many of the cases have emphasized.[8] Moreover, it is especially significant that his grades in arithmetic and science were B. This suggests that in powers of reasoning and understanding he was above average. To counter this, the plaintiff relies on the testimony of a psychiatrist, who first saw the plaintiff during the trial itself, some eight years after the accident. His testimony was based on a twenty-minute interview of the plaintiff conducted in an anteroom of the courtroom, where he was furnished with some of the plaintiff's school grades (but not his eighth grade scores). He was asked to give an opinion, on that hasty review of the mental development of the plaintiff at a point eight years earlier. It is of interest that the psychiatrist expressed considerable hesitancy in giving such an opinion. He said in answer to the question, "It's kind of hard to swing that and tell whether it's thirteen or fourteen," "[T]welve to fourteen is different" adding, "[T]hirteen and fourteen, it can be just a day apart, or months apart in terms of maturity." At one time he testified that his estimate of the plaintiff's age at the time of the occurrence was thirteen years. Finally, he characterized his testimony as merely "an estimation" or "an educated guess." He concluded by saying that:

> "* * * All I can say is that one would estimate, with his history, that he did have [maturity?] in the twelve to fourteen year-old age group."

■ That is quite different medical testimony from that in the *Graham Case*, where there was testimony that a fifteen-year-old child had a record of family insanity and was judged to be of an 8 to 10 mental age. There was no evidence such as that in this case. In fact, the circumstances on which the psychiatrist here seems to have predicated largely his opinion would not support any finding of "lack of mental development." These circumstances were the plaintiff's school progress and the age of his playmates. His school grades—in the C range—certainly would not justify such an inference, especially in the light of his grades in mathematics and science, his two hardest subjects. And the evidence of the age of his playmates is very contradictory. While it is argued that the plaintiff played largely with children in the twelve or thirteen age group,[9] the friends he named specifically were as often as not fourteen or more. In sum, the credible evidence was completely insufficient to show the lack of mental development sufficient to excuse

---

8. See cases cited in note 7.

9. *See Stephens v. Blackwood Lumber Co., supra*, 131 S.E. at 315:
  "* * * he [the plaintiff] sought the company of children younger than himself and preferred to play with them rather than with children of his own age."
  The Court did not regard such evidence as *going* to the mental development of the plaintiff.

the plaintiff from the usual rule governing the right of a trespasser to recover, and the defendant was entitled to a directed verdict on the claim of a right of action under the attractive nuisance doctrine as applied by the courts of North Carolina.

The plaintiff seems to recognize the weakness of his claim based on the attractive nuisance doctrine, for he urges on this appeal that, apart from any right of action under the attractive nuisance doctrine, the judgment should be sustained on the ground that there was sufficient proof of negligence to require submission of the cause to the jury. This argument, however, overlooks the fact that, as a trespasser, the plaintiff could not recover on proof of negligence but was required to proffer evidence of wanton or wilful injury of the plaintiff by the defendant. There was no such evidence. Even if there had been, the plaintiff would have been foreclosed from recovery by his contributory negligence, since his failure to qualify under the attractive nuisance doctrine would not excuse him from the rule that a fourteen-year-old child such as he was could be guilty of contributory negligence.[10]

The judgment below is accordingly reversed and the cause is remanded to the District Court for the entry of judgment in favor of the defendant.

*REVERSED AND REMANDED.*

**10.** *Van Brooks v. Boucher* (1974) 22 N.C.App. 676, 207 S.E.2d 282, 284, and cases therein cited. *See, also, Smith v. United States* (10th Cir. 1976) 546 F.2d 872, 878, which is singularly like this case on the issue of contributory negligence foreclosing recovery by a child on a negligence claim arising out of failure to provide warnings as prescribed by statute in a park.