CHARLES EDWIN DAVIS, Administrator, Appellant, v. MAL-
VERN LIGHT & POWER COMPANY, Appellee.

**NEGLIGENCE: Condition and Use of Lands, Buildings, Etc.—Tres-**
1  **passers.** The only duty an owner of premises owes to a tres-
passer thereon is not to injure him willfully or wantonly, and
to use reasonable care, after his presence on the premises be-
comes known, to avoid injuring him.

**NEGLIGENCE: Condition and Use of Lands, Buildings, Etc.—Bare**
2  **Licensee—Non-Liability for Injury.** One upon premises by the
sufferance or acquiescence of the owner is a bare licensee, and
there is no obligation on the owner's part to keep the prem-
ises in safe condition for the licensee's use.

**NEGLIGENCE: Condition and Use of Lands, Buildings, Etc.—Attrac-**
3  **tive Nuisances.** An electric power pole and wires and a fence
of ten strands of barbed wire around the same are not agen-

cies or instrumentalities reasonably calculated or likely to attract small children, and are not attractive agencies, such as to make the owner of the premises liable for the death of a child who climbed on the fence and reached over and touched one of the electric wires.

*Appeal from Mills District Court.*—J. B. ROCKAFELLOW, Judge.

JULY 7, 1919.

ACTION for damages. The facts are fully stated in the opinion. There was a verdict below, by direction of the court, for defendant. Plaintiff appeals.—*Affirmed.*

*Tinley, Mitchell, Pryor & Ross,* for appellant.

*Cook, Cook & Cook,* and *Thornell & Thornell,* for appellee.

STEVENS, J.—Plaintiff is the father and administrator of the estate of Russell Edwin Davis, a child under the age of six years, who was killed on May 28, 1917, at Malvern, Iowa, by taking hold of an imperfectly insulated electric wire, carrying 2,300 volts of electricity. The defendant is a corporation, owning and operating an electric light company in Malvern, and on the date in question, was supplying power to the Malvern Milling Company for the operation of a large flouring mill.

Three of defendant's wires were carried from a crossbeam near the top of a high pole to another crossbeam attached to the same pole, at a height substantially parallel with eaves of the motor shed of the milling company, to which they were attached, and from which they were carried directly and immediately into the milling company's motor shed. Defendant's pole stood about 30 inches from the building, and was surrounded by 10 strands of galvanized barbed wire, securely fastened to 4 posts, so arranged and set in the ground as to leave an open space be-

tween the pole and the fence. The wire fencing was obvi- ously erected in the manner stated for the purpose of pre- venting persons from coming in contact with the electric wires which entered the motor shed about 6 feet above the ground. The posts to which the barbed wire was attached were from 26 to 40 inches apart, and the strands of wire were 6 or 7 inches apart. From the ground to the top wire was about 5 feet and 6 inches. The mill and electric light pole of defendant are located on a large unenclosed lot, with a yard on the east side about 30 feet wide and one- half block in length, and on the north side by a yard about 100 feet wide and 150 feet in length. There was a street, or highway, adjoining the yard east of the mill. Russell Edwin Davis, at the time of the accident, stood with both feet on the eighth wire from the ground, to which place he had climbed on the wire fencing, and, leaning over the top wire, with his stomach lying thereon, he was able to, and did, reach and take hold of the electric wire nearest to him, and above the crossbeam from which same were carried into the motor shed. The wire taken hold of by him was im- perfectly insulated, and he was instantly killed.

Two grounds of negligence charged in plaintiff's peti- tion and relied upon in argument by appellant are as fol- lows:

"1. That said defendant was guilty of negligence in that it knowingly permitted a dangerous and deadly in- strumentality to be and remain upon the premises of the Replogle Mill in Malvern, Iowa; and the defendant, as a reasonably prudent person, should have known that said dangerous instrumentality, to wit, its three heavily charged electric wires, placed as alleged in plaintiff's petition, were located in a place frequented by children of tender years, or in a place likely to be frequented by children of tender years; and said defendant should have known that the manner in which said wires were placed upon said premises

and the environment in which they were placed would appeal to the playful instincts of children and attract them to it, and, upon their coming, their safety would be imperiled.

"2. That defendant company was negligent because it was reasonably chargeable with knowledge that children were likely to come in contact with its dangerous wires at a point where said wires enter the Replogle Mill in Malvern, Iowa; and, in the exercise of reasonable care, the defendant might have avoided such injury."

If liability exists in this case, it is upon the ground that the injuries resulting in the death of Russell Edwin Davis were received while he was playing with and upon a dangerous agency or instrumentality maintained by defendant in a position and upon premises which its officers and agents should reasonably have anticipated would be likely to attract children of tender years and immature judgment, and cause injury to them.

The evidence shows, as stated above, that the electric light pole and wire fencing were upon unenclosed premises, and that same were surrounded by a large open space, where children frequently congregated to play. The officers and employees of the milling company, however, ordered them to leave the premises, when their presence thereon became known to them. There is no evidence of an express invitation to the children to play upon the open space surrounding the mill property, nor is there direct evidence that the officers or agents of defendant knew that children were accustomed to assemble for play and sports upon the premises, or in the vicinity of the alleged dangerous instrumentality. They were, however, familiar with the surroundings.

Unless deceased went upon the premises upon the invitation of the defendant, express or implied, he was a trespasser, and defendant owed him only the duty not to

injure him willfully or wantonly, and to use reasonable care, after his presence on the premises became known, to avoid injuring him.  *Gregory v. Woodworth,* 93 Iowa 246; *Connell v. Keokuk E. R. & P. Co.,* 131 Iowa 622; *Brown v. Rockwell City Canning Co.,* 132 Iowa 631; *Anderson v. Fort Dodge, etc., R. Co.,* 150 Iowa 465; *Hart v. Mason City B. & T. Co.,* 154 Iowa 741; *Wilmes v. Chicago G. W. R. Co.,* 175 Iowa 101.  Or, if deceased was upon said premises by the sufferance or acquiescence only of defendant, he was a bare licensee, and defendant would not be liable for the injuries resulting in his death.  *Connell v. Electric R. Co.,* supra; *Wilmes v. Chicago G. W. R. Co.,* 175 Iowa 101.

1. NEGLIGENCE: condition and use of lands, buildings, etc.: trespassers.

2. NEGLIGENCE: condition and use of lands, buildings, etc.: bare licensee: nonliability for injury.

The whole case turns on the question whether the several strands of barbed wire attached to the posts surrounding the electric light pole, together with their immediate surroundings, were of a nature likely to attract children, and whether the defendant, and its officers and agents, should have known therefrom, together with the open and exposed condition of the property, that children would be likely to be attracted and injured thereby.

3. NEGLIGENCE: condition and use of lands, buildings, etc.: attractive nuisances.

The theory upon which liability for injuries on account of so-called "attractive agencies" or "instrumentalities" rests, is that an implied invitation is thereby extended to children of tender years to go upon premises where the same are situated, and that they are likely to be injured thereby: that is, the implied invitation thus extended is equivalent to an express invitation to an adult.  *Gregory v. Woodworth,* supra, and cases cited supra.  The writer of the opinion in *Wilmes v. Chicago G. W. R. Co.* said:

"All the cases of attractive nuisance seem to rest upon

the thought that exposing anything of a character that appeals to children's nature, and, by appealing, draws them to it, is, in its very nature, an implied invitation to them to come. It is not material in an inquiry of this kind whether the children had been accustomed to come or not; whether it had remained a long time or a short time. The question is: Did the party charged expose to the public a thing of such an attractive nature that, as a reasonably prudent man, he should have known that it would draw children to it, and, having drawn them there, they were likely to be injured from the character of the instrumentality?"

The doctrine has been adopted in many jurisdictions of this country, but other courts have refused to adopt it, and still others have restricted its application to "turntable cases" only. For a somewhat complete collection and discussion of the decisions of the courts of this country upon this question, see *Wheeling, etc., R. Co. v. Harvey*, 77 Ohio St. 235 (122 Am. St. 503), where much is said pro and con upon this question.

Was, therefore, the alleged instrumentality complained of of such a nature as that. defendant and its officers and agents should reasonably have known and anticipated that it would be likely to attract children of tender years and immature judgment to come upon the premises and cause injury to them? Neither the barbed wire fence surrounding the pole nor the electric wires alone menaced the safety of children playing about the mill. The electric wires, although heavily charged and imperfectly insulated, entered the motor shed of the milling company more than six feet above the ground, and beyond the possible reach of children likely to congregate or play upon the mill premises. The obvious purpose of surrounding the pole with a barbed wire enclosure of many strands was to guard against injury to adults capable of reaching the wires from the ground, or coming in contact therewith.

Should the defendant reasonably have anticipated that children of the age of deceased, and even older, but of tender years, and incapable of understanding or appreciating the danger of taking hold of imperfectly insulated electric wires carrying a current of high voltage, would be attracted by the wire fencing, and, by climbing upon same, reach a zone of danger? Did it present an attraction to the sportive instincts of small children to climb, against which defendant should have safeguarded? It is hardly enough to create an "attractive nuisance" that some children might be tempted to climb upon the building or up an electric light pole. As was said by Mr. Justice Holmes, in *Holbrook v. Aldrich,* 168 Mass. 15 (46 N. E. 115) :

"Temptation is not always invitation. As the common law is understood by the most competent authorities, it does not excuse a trespass because there is a temptation to commit it, or hold property owners bound to contemplate the infraction of property rights because the temptation to untrained minds to infringe them might have been foreseen."

The writer of the opinion in *Edgington v. Burlington. C. R. & N. R. Co.,* 116 Iowa 410, in which case the doctrine of "attractive nuisance" was first adopted in this state, in the course of the opinion in *Anderson v. Fort Dodge, etc., R. Co.,* 150 Iowa 465, reaffirming the doctrine of the above case, said :

"To say that a property owner must guard against such injury to a trespassing boy, simply because it is possible for him, in a venturesome spirit, to climb into the zone of danger, would be intolerable. In every dooryard and on every street side are shade and ornamental trees. To climb trees is as natural to the average boy as to a squirrel. Such sport is always attended with danger that the climber may lose his hold or break a branch and fall, to his severe injury. Not infrequently it may bring him to an elevation where he is exposed to contact with wires carrying electric

currents of greater or less intensity. If he falls and breaks his bones, or if he receives a stunning shock of electricity, ought the owner of the tree to be held liable in damages because he did not guard it against the approach of the lad, or because he did not give notice or warning in some way of the dangers to be apprehended in climbing it? No court has ever gone to such an extent, and the establishment of such rule would render the ownership of real estate a very undesirable investment."

And to like effect see *Hart v. Mason City B. & T. Co.*, and other cases cited, supra.

The doctrine under discussion should not, therefore, be extended so as to include and make every machine or agency capable of injuring children, or that may to some extent appeal to the caprice or buoyant instincts of childhood, an attractive nuisance. To do so would impose an unreasonable burden upon property owners, and unduly restrict the proper and rightful use thereof. While a barbed wire fence surrounding a pole in close proximity to a building might offer some temptation to climb, to a boy habitually frequenting the premises where same is located, it would, in our opinion, be an unwarranted extension of the doctrine under consideration to hold that same constituted an agency or instrumentality reasonably calculated, or likely, to attract small children. While the evidence shows that children were frequently seen upon the premises of the milling company, deceased, so far as appears from the evidence, was the only child that attempted to climb the wire fencing. It is true that the several strands of wire were close together, as were also the barbs thereon, and it would seem as though the danger of becoming injured thereby would be so manifest as to be as likely to repel as to induce children to climb the same.

The accident was indeed a sad one, and naturally appeals to the sympathy of courts and juries; but, as shown

by the record before us, deceased was a trespasser; and, under the rules above stated, and firmly established in this state, no question was presented for submission to the jury, and the court properly directed a verdict in defendant's favor. In view of what has already been said, other questions discussed by counsel do not call for separate consideration. The ruling of the court below was right, and is, therefore,—*Affirmed.*

LADD, C. J., WEAVER and GAYNOR, JJ., concur.