Rockingham,
No. 5022.

CHARLES E. BOLDUC *v.* ROBERT M. CRAIN.

Argued May 1, 1962.

Decided June 5, 1962.

164

*Burns, Bryant & Hinchey* (*Mr. Donald R. Bryant* orally), for the plaintiff.

*Howard B. Lane* (by brief and orally), for the defendant Crain.

DUNCAN, J.   The defendant asserts that his motions for a nonsuit and a directed verdict were erroneously denied because there was no evidence from which it could be found that the defendant's driver DeGrasse was negligent and because "Bolduc assumed the risk of being injured by a dangerous team when he voluntarily entered the pulling ring."

There was evidence from which the following facts could be found.  As one of its attractions the Deerfield Fair conducted horse-pulling contests in which the winner was determined according to the weight which a pair of horses could pull on a wooden drag or boat, for a six-foot distance in three attempts, without stepping outside of an area marked off by two twenty-four foot poles set in the ground on either side of the team.  These poles were twelve feet apart where the rear of the drag was set at the commencement of the pull, and twenty feet apart at the opposite end.  The weight on the drag consisted of stones by which the weight was gradually increased and at the time of this accident the load weighed from

7,500 to 8,000 pounds. Teams were hitched to the drag by means of a "spreader" which was a metal rod with a hole or eye at the center and whippletrees at either end, behind each horse. To attach the spreader to the drag, two "holders," holding either end of the spreader by means of straps, would drop the eye of the spreader over a hook on the front of the drag. The evidence indicated that pulling horses are trained to pull as soon as the spreader is placed on the hook; and that when the load on the drag is heavy, in order to start it, it is the practice to pull the drag to the left if it is pointing to the right, and vice versa.

A team of horses owned by the defendant and driven by his employee DeGrasse was entered in the 3,300 class, so-called, for horses not over that weight. The team was scheduled to enter the ring to be hitched to the drag for the final pull of the contest in progress. When the announcer called for it to enter the ring one of two boys who had been holding the spreader had gone to the horse barn with other horses which had just finished competition. As DeGrasse entered the ring with the defendant's horses, the plaintiff stood nearby; and it could be found that in accordance with custom DeGrasse asked him to take the spreader on the right or off side of the horses, and the plaintiff did so.

In accordance with practice the horses then circled the ring and were backed toward the drag by DeGrasse. The spreader was dropped onto the hook, and the horses immediately lunged to the right "at a forty-five degree angle" and the drag was lifted onto the plaintiff's left foot before he could move away. In order to extricate his foot it was necessary to move the drag off, and the foot was seriously injured.

There was evidence that the defendant's horses were what is known as a "hot team" or a "lively team," and there was also evidence that the team habitually pulled toward the right. It could be found that the plaintiff was ignorant both of the condition of the team at the time, and of its habit of pulling toward the right, and that because the drag was pointing to the right when the spreader was attached a person unfamiliar with the team would expect it to pull to the left in accordance with the usual practice.

The plaintiff Bolduc was sixty-three years of age, with considerable experience in the management of horses and mules, and was generally familiar with the conduct of pulling contests at this particular fair. It could be found that he had not seen the defendant's team of horses participating in the pulling contest in progress

before he was asked to hold the spreader. It could also be found that the team in question was "hot" or "lively" to such an extent that it was "dangerous"; that the plaintiff was given no warning of this, or of the animals' tendency to pull to the right, or the driver's intention to drive them to the right on this particular pull. There was also testimony from which it could be found that custom and reasonable care required that under such circumstances a driver should warn a "holder" who had just entered the contest of the condition of the horses and of his purpose to drive them to the right.

The defendant maintains that his driver was under no duty to warn or instruct the plaintiff because of the plaintiff's long experience in "horse-pulling contests," and that defendant was entitled to a directed verdict, or if not that the jury should have been instructed in accordance with the following request: "6. In view of Mr. Bolduc's long experience in horse pulling contests, the defendant was under no duty to warn or instruct him as to the performance of his duties in handling the spreader or of the dangers incident thereto."

The defendant likewise maintains that the following requests for instructions were erroneously denied: "7. If you find that Bolduc knew or should have known of the dangers connected with the handling of the spreader, then you cannot find the defendant negligent for failing to warn him of such danger of which he knew or should have known." "2. If you find that Bolduc was familiar with the dangers of holding a spreader, then Bolduc is presumed by law to have assumed the risk of being injured if he holds the spreader and he cannot recover for his injuries."

In support of all of his exceptions, the defendant contends that he was deprived of the defense of the plaintiff's assumption of the risk, and that submission to the jury of the issue of his contributory negligence did not cure this error.

The law of this jurisdiction does not support the defendant's argument. Beginning with *Kambour* v. *Railroad*, 77 N. H. 33 in 1913, and progressing through *Vidal* v. *Errol*, 86 N. H. 1, and *Ghilain* v. *Couture*, 86 N. H. 117, 120, to *Papakalos* v. *Shaka*, 91 N. H. 265, 268, in 1941, it was long ago settled that the defense of assumption of risk is not available in this state to a defendant in a common-law tort action such as this. *Brosor* v. *Sullivan*, 99 N. H. 305, 308. In *Papakalos* v. *Shaka*, *supra*, the case of *Goldstein* v. *Corporation*, 86 N. H. 402, relied upon by the defendant, was held

to be consistent with this view. Recent text writers have pointed out that except in cases of express contract the term "assumption of the risk . . . adds nothing to modern law except confusion." 2 Harper & James, Law of Torts, s. 21.8, *p.* 1191; James, 61 Yale L. J. 141, 169.

As applied to participants in sporting events and games, the rule in this jurisdiction does not differ. We consider that *Paine* v. *Association,* 91 N. H. 78, where the plaintiff sought to recover for injuries suffered in a basketball game, represents no departure from the established rule. See 2 Harper & James, *supra,* s. 21.5, *pp.* 1181-1182. Annot. 7 A. L. R. 2d 704, 706, 709. In *Paine* v. *Association, supra,* 79, the Court said: "The only reasonable conclusion to be reached is that if the [plaintiff] voluntarily encountered a known danger with no heed thereto . . . such conduct precludes recovery. *Robinson* v. *Railroad,* 85 N. H. 474, 475, 476."

It is established law that of itself "incurrence of a known danger is not the legal equivalent of negligence." *Piateck* v. *Swindell,* 84 N. H. 402, 404. "While a plaintiff is contributorily negligent if he encounters a known danger to which he paid no heed (*Butler* v. *King,* 99 N. H. 150, 152), he is without fault if he 'carefully incurred a known danger.' *Williamson* v. *Company,* 89 N. H. 216, 218." *Brosor* v. *Sullivan, supra,* 99 N. H. 305, 308. See *LaFontaine* v. *St. John,* 92 N. H. 319, 322.

The jury in this case was instructed: "We are dealing with someone participating in a contest, a contest that of course has some dangers connected with it . . . and in that sense of course the plaintiff in this situation must assume the normal dangers incident upon such a situation, in such a contest which you may find this horse-pulling contest was." Otherwise the case was submitted wholly on the issues of whether the defendant was chargeable with negligence in failing to warn of unusual dangers not obvious to the plaintiff, and whether the plaintiff himself was guilty of contributory negligence. On the conflicting evidence, both of these questions were for the jury, and the motions for nonsuit and directed verdict were properly denied. The defendant's rights were adequately protected by the instructions given.

There was no error in denial of the requested instructions. Request numbered 6 was equivalent to a request for a directed verdict, since it would have negatived any duty to the plaintiff on the part of the defendant's driver. Requests 2 and 7 failed to distinguish between the "normal dangers incident" to the contest

referred to in the instructions given, and those peculiar to this particular contest, which the jury could find were unknown to the plaintiff through no fault of his.

The instructions given to which no exceptions were taken, were as favorable to the defendant as he was entitled to have. The fact that the quoted instruction was couched in language of "assumption of dangers" constitutes no ground for new trial since its effect was to relieve the defendant of a duty to warn of "normal dangers" against which the plaintiff's experience required him to protect himself. Under the instructions given, if the plaintiff were found to have encountered any of the dangers carelessly, the jury was required to return a verdict for the defendant. *Paine* v. *Association, supra.*

No exception could lie to the instruction that the burden of proving contributory negligence was on the defendant, and no exception was taken. RSA 507:8. The defendant did not request and was not entitled to an instruction that the burden of proving nonassumption of the risk was on the plaintiff. *Brosor* v. *Sullivan, supra.* The order is

*Judgment on the verdict.*

All concurred.