William ROSENAU, a Minor, by Ewald Rosenau, his Father and Next Friend and Ewald Rosenau, Individually, Appellees,

v.

CITY OF ESTHERVILLE, Appellant.

No. 55092.

Supreme Court of Iowa.

June 29, 1972.

Daniel D. Sanderson, Estherville, and Pendleton & Pendleton, Storm Lake, for appellant.

Fitzgibbons Brothers, Estherville, for appellees.

REYNOLDSON, Justice.

This was a law action for damages. Defendant city appeals from judgment based on a jury verdict awarding William "Willy" Rosenau, age 14, damages for personal injuries, and awarding his father damages for medical expenses, loss of earnings and society and service of his son. Willy's injuries were sustained when an unexploded pyrotechnic device, found after a July 4th fireworks display conducted by the city and the Estherville Chamber of Commerce, went off in his hand after being ignited.

Fireworks for this 1969 celebration were ordered by the city from Rich Bros. Interstate Display Fireworks Co. of South Dakota. Included in the display were a number of "thunder and rainbow" aerial shells. These were "Class B" fireworks, sold only on permit, not "Class C" fireworks which may be sold over-the-counter in many states but not in Iowa. The statutory permit (§ 732.18, The Code) was issued by Estherville's clerk to the city of Estherville as permittee.

The record is clear this was a promotional project by the city and the Estherville Chamber of Commerce. The Chamber ultimately reimbursed the city for one-half of the $500 fireworks cost. The city in prior years had participated in this event, which until 1968 had been held on the country club grounds. In 1968 and 1969 the site selected was a ball park within the city limits. Although ownership of this park was not established, evidence was introduced that the city furnished electricity for lighting and its recreation department supervised the area. The park is near high school and grade school buildings and a residential area. It was unfenced and easily accessible from any direction. Children customarily played there.

As in past years, the city firemen conducted the 1969 display. A fire truck was on the scene. As the devices were ignited four malfunctions occurred, including two premature explosions of aerial bombs. One malfunction resulted in secondary explosions on the ground. A fireman was wounded, taken from the scene, and given medical treatment.

Following the display, though lighting was available, the fire department made no effort to search the park for unexploded devices or restrict persons from the area until this could be done. There was trial evidence from which the jury could have found these precautions were contained in Rich Bros. written instructions, drawn to the attention of city employees in prior years, and sent with this display. Further, the area was not wet down after the event.

The next morning a Chamber of Commerce representative, assisted by two small boys, picked up the area. Several misfired devices were discovered and detonated in a barrel.

On the same morning, after this "clean-up," two of Willy's young friends found unexploded devices in the park and took them to a residence where Willy was an overnight guest. Willy ignited one of these devices on the ground in the back yard. It clipped the grass in a small area and made a sound described by one boy as approximating the noise made by a "black cat" firecracker rather than the noise made by the July 4th fireworks display. (A "black cat" was the class "C" type firecracker with which Willy and his friends had some experience.) The other boy

present said the noise was louder than a "black cat."

Willy returned with his friends to the park and there found a fused device about two and a half inches long and one-half inch in diameter, wrapped in a brown paper with a string around it. That evening during a family picnic Willy held this device in his hand while a friend ignited the fuse. Before he could throw it, it exploded in his hand.

The city assigns five errors relied on for reversal.

I. Trial court is alleged to have erred in failing to find Willy guilty of contributory negligence as a matter of law. This was urged in motions for directed verdict and post verdict motions.

Basic to our consideration of this issue are certain propositions well established in our law and incorporated in our Rules of Civil Procedure. In considering the propriety of a motion for directed verdict the court views the evidence in the light most favorable to the party against whom the motion was made. Rule 344(f) (2), R.C.P. He who pleads and relies upon the affirmative of an issue must carry the burden of proving it. R.C.P. 344(f) (5). Generally the question of contributory negligence and proximate cause are for the jury; it is only in the exceptional case these issues may be decided as matters of law. R.C.P. 344(f) (10). Even where the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, a jury question is engendered. R.C. P. 344(f) (17).

Section 619.17, The Code, shifted to the defendant not only the burden of pleading and proving plaintiff's contributory negligence, but the burden of proving such negligence, if any, was a proximate cause of the injury or damage. We have held it is one thing to determine the existence of negligence as a matter of law but quite another thing to hold that such negligence was a proximate cause as a matter of law.

Kaus v. Scott, 174 N.W.2d 446 (Iowa 1970); Robeson v. Dilts, 170 N.W.2d 408 (Iowa 1969).

 However, the city asserts Willy was negligent per se because he violated a penal statute, § 732.18, The Code:

"732.18 *Supervised exhibitions—permit.* Except as hereinafter provided it shall be unlawful for any person, firm, copartnership, or corporation to offer for sale, expose for sale, sell at retail, or *use or explode any fireworks*; provided the council of any city or town or the trustees of any township may, upon application in writing, grant a permit for the display of fireworks by municipalities, fair associations, amusement parks, and other organizations or groups of individuals approved by such city, town, or township authorities *when such fireworks display will be handled by a competent operator * * *.*" (Emphasis added)

Defendant was of course in violation of this statute if it failed to engage a competent operator for the display, a point apparently answered by the jury's verdict. Historically, it is common knowledge a major consideration in enacting this legislation was to protect minors from the fireworks injuries so prevalent prior to its adoption, by limiting access to such explosives. It would be an anomaly if the city could rely on this statute to defeat this minor's claim. Nor are we persuaded Willy's alleged violation of § 732.18 was negligence per se as to him.

 The city relies solely on our decisions holding violation of a rule-of-the-road statute fixing the standard of care, in absence of legal excuse, is negligence per se. We have not extended this rigid rule to other tort cases involving breach of a statute or ordinance. In those situations we have said each case is to be decided in light of the purpose and intent of the pertinent statute or ordinance. Montgomery v. Engel, 179 N.W.2d 478 (Iowa 1970).

We are not compelled to determine the degree of negligence, if any, arising out of Willy's alleged violation of § 732.18 because a more basic rule of law applies. Assuming (without deciding) such violation would ordinarily be negligence per se or prima facie negligence, those concepts are in conflict with the enlightened rule that conduct of children is to be measured, not by adult standards, but the standard of reasonable behavior in children of similar age, intelligence and experience. We have long recognized this standard. Giarratano v. Weitz Company, 259 Iowa 1292, 147 N.W.2d 824 (1967); McKiddy v. Des Moines Electric Co., 202 Iowa 225, 206 N.W. 815 (1926). In these cases where the two principles collide—where statute and child meet—the better reasoned decisions hold a child is not to be charged with negligence per se even though his conduct may involve violation of a statute which relating to an adult would require application of that rule. Brown v. Connolly, 206 Cal. App.2d 582, 24 Cal.Rptr. 57 (1962); Fightmaster v. Mode, 31 Ohio App. 273, 167 N.E. 407 (1928); Simmons v. Holm, 229 Or. 373, 367 P.2d 368 (1961); Rudes v. Gottschalk, 159 Tex. 552, 324 S.W.2d 201 (1959); Morby v. Rogers, 122 Utah 540, 252 P.2d 231 (1953); 57 Am.Jur.2d, Negligence § 375, p. 779–780; 65A C.J.S., Negligence § 146(1), p. 181 n. 68.5. We are not confronted here with the question whether this principle should apply when the child has engaged in what is usually considered an adult activity, such as flying an airplane or driving an auto. In such case there is strong authority that public policy outweighs those considerations which ordinarily require a separate standard of care for a minor. W. Prosser, Law of Torts § 32, pp. 156–157 (4th ed. 1971); 2 Restatement (Second) Torts § 283A, comment c at 16.

The city concedes had Willy been age 13, our established standard creating a rebuttable presumption of freedom from contributory negligence would have carried his case to the jury. Lenth v. Schug, 226 Iowa 1, 281 N.W. 510, 287 N.W. 596 (1938); Johnston v. Delano, 175 Iowa 498, 154 N.W. 1013 (1915). Here the trial court instructed the jury Willy's conduct was to be viewed in light of his age, experience, maturity or immaturity of his judgment, his education and general situation in life and what would be expected of an ordinary person of that age and experience. The same instruction told the jury it was unlawful to use or explode fireworks without a permit, and if Willy violated this law such violation would constitute contributory negligence. Defendant made no objection to that instruction, which was more favorable to the city than the applicable rule above set out.

Willy's parents came to this country from Germany in 1952. Of their six children, only Willy was born in the United States. Neither parent could speak English before coming to America, and the mother cannot read or write. They never had fireworks around the house nor did they warn Willy about fireworks. He received only average grades in school. The record shows Willy related to children younger than he, indicating an immaturity for his years.

The evidence is clear Willy had joined neighborhood children in firing firecrackers of the "black cat" and "zebra" varieties, and at one time was in a group warned by a city policeman to cease this activity. It is also evident he did not know and could not have known of the fast fuse and devastating force of the device he found. City concedes this device was a part of the July 4th display. The jury could have reasonably concluded it was an interior component of a "thunder and rainbow" aerial shell, short-fused to explode, with others, high in the air after the shell was projected from a steel mortar.

The president of Rich Bros. testified a "black cat" firecracker is a quarter of an inch wide by one and one-half inches in length containing two grams of powder—an amount in volume equal to two pin

heads. He identified exhibit "Q" as identical to that device which injured Willy, describing it as fast-fused. He did not dispute it had an explosive force 500 to 1000 times greater than a "black cat." No one, according to this witness, would ever see a "Q" type device unless he visited a factory.

Despite its explosive impact, exhibit "Q" was only about one inch longer and one-fourth inch wider than a "black cat" firecracker. It was constructed so that it could not stand on the ground, as did the similar appearing slow-fused device Willy had ignited earlier in the day.

Under this record the jury could have found that had city firemen properly policed the area and picked up debris from the ball park there would not have been an unignited device for Willy to find; they could find this was the proximate cause of the ensuing injury. Dangerous explosives, appearing to be fireworks, left on a children's playground might reasonably appear to a jury as the moving or producing cause of inevitable injury to a child. 57 Am.Jur.2d, Negligence § 124, pp. 474–475. Under this record we hold trial court did not err in submitting to the jury the issues of Willy's alleged contributory negligence, and proximate cause. We find support for this reasoning in Williams v. United States, 352 F.2d 477 (5 Cir. 1965) second appeal, 379 F.2d 719 (5 Cir. 1967); Bridges v. Dahl, 108 F.2d 228 (6 Cir. 1939); Serviss v. Cloud, 121 Kan. 251, 246 P. 509 (1926); Kingsland v. Erie County, 298 N. Y. 409, 84 N.E.2d 38 (1949); and Stephens v. Blackwood Lumber Co., 191 N.C. 23, 131 S.E. 314 (1926).

II. City's second assignment of error is trial court's failure to give a requested instruction on the doctrine of assumption of risk. This affirmative defense was pled by the city, which adopted, with court permission, a co-defendant's requested instruction incorporating the doctrine. When trial court refused to submit the instruction, the only record made by the city was, "Comes now the defendant City of Estherville and

excepts to the Court's failure to instruct the jury on assumption of risk."

Plaintiffs' brief argues the error, if any, was not preserved, city's exception having failed to incorporate supporting reasons or grounds. Rule of Civil Procedure 196 provides in relevant part, "Within such time, all objections to * * * failing to give any instruction must be made * * * specifying the matter objected to *and on what grounds. * * *"* (Emphasis added) Defendant city contends the grounds are self-evident in the words, "assumption of risk." It argues that if the objection must be considered in light of the record as made at close of all evidence, as we held in Martin v. Jaekel, 188 N.W.2d 331 (Iowa 1971), a statement of grounds was then unnecessary. Plaintiffs rely on our decision in Stewart v. Hilton, 247 Iowa 988, 77 N.W.2d 637 (1956), where failure to assign grounds for an exception to court's refusal to instruct on "legal excuse" and "sudden emergency" was held not to preserve the claimed error.

We find it unnecessary to resolve this controversy on this limited ground. The answer lies in the basic consideration whether the doctrine (assumption of risk) had proper application in this litigation. Excellent briefs, filed by counsel for both parties, meet this issue head-on.

Assumption of risk gestated in master-servant law, developing in response to the early impulse of common-law courts "to insulate the employer as much as possible from bearing the 'human overhead' which is an inevitable part of the cost—to someone—of the doing of industrial business." Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 59, 63 S.Ct. 444, 447, 87 L.Ed. 610, 613 (1943). Today's workmen's compensation acts legislatively repudiate the doctrine in most master-servant situations. Unfortunately, it had crept into and remains embedded in other tort fields, a heritage of the extreme individualism of the early industrial revolution. 2 Harper and James, The Law of Torts § 21.8, p. 1191 (1956).

The term "assumption of risk" as used by courts, assumes two different meanings. (1) In one sense, it is an alternative expression for the proposition that defendant was not negligent, i. e., either owed no duty or did not breach the duty owed. This "primary meaning" is illustrated by the case in which an employee is injured by a danger naturally incident to the employment, even though the employer has exercised all reasonable care for his safety. (2) In its "secondary meaning" the term is used where the injured person acted unreasonably in assuming a particular risk, and the defense of assumption of risk coincides with the defense of contributory negligence. In this sense, assumption of risk is an affirmative defense to an established breach of duty. Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44, 155 A.2d 90 (1959); Annot., Assumption of Risk—Distinctions, 82 A.L.R.2d 1218.

Justice Weintraub, speaking in *Meistrich,* vividly described the chaos created in our body of jurisprudence by the misuse of this concept. Our own cases demonstrate the insight of Justice Weaver, who in 1906 (in Martin v. Des Moines Edison Light Co., 131 Iowa 724 at 735, 106 N.W. 359 at 362) observed, "The very common use of this phrase [assumption of risk] with reference to two widely different legal propositions is doubtless responsible for the confusion here existing." We have refused to reverse where an instruction on the doctrine (in its secondary meaning or sense) was not given. Knudsen v. Merle Hay Plaza, Inc., 160 N.W.2d 279 (Iowa 1968); Holmes v. Gross, 250 Iowa 238, 93 N.W.2d 714(1958). We have reversed for failure to give such instruction. Wright v. Peterson, 259 Iowa 1239, 146 N.W.2d 617 (1966). We have said the doctrines of contributory negligence and assumption of risk sometimes overlap, that the latter phrase is probably a misnomer, but nonetheless the doctrines must not be confounded with each other. White v. McVicker, 216 Iowa 90, 246 N.W. 385 (1933). More recently we have said, "The issues of free-

dom from contributory negligence and assumption of risk are closely related to that of defendants' primary negligence and *depend upon the same reasoning.*" (Emphasis added) Capener v. Duin, 173 N.W.2d 80, 86 (Iowa 1969). The evident difficulty we have encountered in grappling with this concept is surely minimal when compared with the problems it has created for trial judges and lawyers.

The dissent in Wright v. Peterson, supra, refers to decisions from only three jurisdictions where the assumption of risk concept has been abolished or greatly restricted. Felgner v. Anderson, 375 Mich. 23, 133 N.W.2d 136 (1965); McGrath v. American Cyanamid Co., 41 N.J. 272, 196 A.2d 238 (1963); Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44, 155 A.2d 90 (1959); McConville v. State Farm Mutual Automobile Ins. Co., 15 Wis.2d 374, 113 N.W.2d 14 (1962). Other jurisdictions should now be noted. In Leavitt v. Gillaspie, 443 P.2d 61, 68 (Alaska 1968), the Alaska Supreme Court refused to allow an assumption of risk instruction in a passenger death case, stating,

"The just concept should be whether a reasonably prudent man in the exercise of due care would have incurred the risk despite that knowledge, and if so, whether he would have conducted himself in the manner in which the plaintiff acted in the light of all the circumstances, including the appreciated risk. This means that only the traditional notions of negligence and contributory negligence should govern cases such as we have here and that the defense of assumption of risk should not be a defense and should not be used."

See also Burrows v. Hawaiian Trust Company, 49 Hawaii 351, 417 P.2d 816 (1966) ("Plaintiff did not assume the risk of injury which she reasonably hazarded in the performance of her duty as a nurse, and which ensued despite her fulfillment of her obligation of due care."); Huckabee v. Bell & Howell, Inc., 47 Ill.2d 153, 265

N.E.2d 134 (1970) ("However, it is now clear that so-called assumption of risk is not a defense to an action based on common-law negligence."); Parker v. Redden, 421 S.W.2d 586 (Ky. 1967) ("We have reached the point in this discussion where we must say what we are going to do about assumption of risk. The answer is that we are going to abolish it."); Bolduc v. Crain, 104 N.H. 163, 181 A.2d 641 (1962) ("* * * [I]t was long ago settled that the defense of assumption of risk is not available in this state to a defendant in a common-law tort action such as this."); McWilliams v. Parham, 269 N.C. 162, 152 S.E.2d 117 (1967) ("It is well established in this jurisdiction that assumption of risk is not available as a defense to one not in a contractual relationship to the plaintiff."); Ritter v. Beals, 225 Or. 504, 358 P.2d 1080 (1961) ("Nothing is added to contributory negligence, except confusion, when facts which constitute contributory negligence are pleaded in a separate defense of assumption of risk."); Feigenbaum v. Brink, 66 Wash.2d 125, 401 P.2d 642 (1965) ("To permit the application of assumption of risk to the facts in this case is tantamount to dividing the factual elements which, together, constitute the defense of contributory negligence."); Ford Motor Company v. Arguello, 382 P.2d 886 (Wyo. 1963) ("Distinctions between assumption of risk and contributory negligence have not been adopted in Wyoming.")

The Minnesota Supreme Court recently indicated an intention to review the validity of the assumption of risk doctrine. Parness v. Economics Laboratory, Inc., 284 Minn. 381, 170 N.W.2d 554 (1969). The Tenth Circuit Court of Appeals, in Moomey v. Massey Ferguson, Incorporated, 429 F.2d 1184 (10 Cir. 1970), reluctantly applied New Mexico state law, but commented, at 1188 n. 3,

"Thus, we recognize *as we must* that contributory negligence and assumption of risk are separate defenses in New Mexico *although we must confess to* *some difficulty in the separate application of the two rules.*" (Emphasis added)

The problems created by New Mexico's assumption of risk doctrine, noted by the federal court, were also apparent to the New Mexico Supreme Court. A year later it abolished the doctrine from its law. Williamson v. Smith, 83 N.M. 336, 491 P.2d 1147 (1971).

By treating assumption of risk in its secondary sense as an affirmative defense, distinct from the defense of contributory negligence, we create the potential of a verdict for defendant even though the jury might logically find on the issue of contributory negligence that plaintiff exercised the care of a reasonably prudent man under all the circumstances.

"* * * [I]t would be improvident to transplant the doctrine of assumption of risk into other areas with the discredited notion that one who knew (or should have known) of a negligently created risk is barred even though free of fault, i. e., even though a reasonably prudent man would have incurred the risk despite that knowledge. Rather the just approach, as with respect to other applications of contributory negligence, is to leave the issue to the jury if reasonable men may disagree or to decide it as a matter of law if there is no room for difference in evaluation. So it may be one thing to raise the bar as a matter of law if a man entered a blazing structure to retrieve a fedora, but something else thus to bar him if his purpose was to rescue a child."

—Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44, 53, 155 A.2d 90, 95 (1959).

■ Application of assumption of risk in its secondary sense results in more than a potential defeat of a tort claim where defendant's negligence and plaintiff's freedom from negligence are established. Instructing on assumed risk elements as a separate affirmative defense results in duplicitous

instructions on a single aspect of the case. We have recognized that instructions should not give undue emphasis to any phase of the case favorable to either side, and even correct statements of the law, if repeated to the point of undue emphasis, may constitute reversible error. Andrews v. Struble, 178 N.W.2d 391 (Iowa 1970); Clarke v. Hubbell, 249 Iowa 306, 86 N.W.2d 905 (1957).

This case illustrates the violation of the above rule which is inherent in all such situations. In that part of instruction 1 relating to contributory negligence, the jury was told:

"By way of an affirmative defense, both the defendant City and the defendant Rich Bros. allege that at all times material herein, William was well aware of the explosive nature and the inherent danger in igniting fireworks while holding them in his hand. That at the time of the alleged injury, William was negligent in the following particulars:

\* \* \* \* \* \*

b. In allowing the fuse of the said fireworks device to be lit while holding it in his hand, when he knew in the exercise of reasonable care \* \* \* that lighting the fuse thereon would cause the device to explode and cause injury to him; \* \* \*."

What else is this but an instruction on the doctrine of assumption of risk in its secondary sense? Yet defendant contends it is entitled to still another such instruction, eliminating only any concept of plaintiff's negligence.

■ We hold that in a common-law tort case in which defendant raises the issue of plaintiff's negligence, the elements of "assumed risk" shall no longer be pled and instructed on as a separate defense. The facts of the case, as they bear on the reasonableness of plaintiff's conduct, may well be proper affirmative allegations of plaintiff's negligence in the answer. See Re-statement (Second) of Torts § 466, p. 511; Gibson v. Shelby County Fair Ass'n, 246 Iowa 147, 65 N.W.2d 433 (1954). If the required record is made, the issue would be appropriate in an instruction on whether a reasonably prudent man in the exercise of due care (a) would have incurred the known risk and (b) if so, whether in the light of all the circumstances (including the appreciated risk) he would have conducted himself in the manner in which plaintiff acted. Of course, other contributory negligence instructions may also be warranted by the evidence.

■ We thus abolish assumption of risk as a separate defense in all cases in which contributory negligence is now available as a defense. We retain assumption of risk as a defense in other cases.

■ It follows trial court committed no error in failing to instruct on the assumption of risk doctrine in this case.

Our above holding is applicable to all cases tried hereafter. Cases already tried in which the doctrine of assumption of risk was appropriately submitted to the jury under our prior decisions will not necessarily be reversed. Where the doctrine was not submitted and our holding here is applicable we shall of course not reverse on that ground.

III. The third and fourth errors assigned by the city relate to instructions submitted to the jury.

■ In instruction 13 the court told the jury that one handling fireworks of this kind (for a public display) must exercise the highest degree of care, must guard against such perils as might reasonably be foreseen, and that "such duty extended to making certain that unexploded fireworks, or devices, were not left on the ground following the display, if the city knew, or should have known, that such devices would be easily accessible to children whose presence should have been anticipat-

ed." This instruction also included the paragraph:

"The character of the fireworks, or devices, being such that will attract or allure children, the city, or those conducting the display, must expect children to act upon childish instincts and impulses and take all precautions necessary to remove dangerous instrumentalities from the area at its earliest opportunity."

In objecting, the city conceded the duty was one of "high degree of care." Complaint was made the instruction imposed an absolute duty, and further, it set out the law of attractive nuisance which had not been pled or proved.

The rule expressed in instruction 13 is rooted in our case law. In Eves v. Littig Const. Co., 202 Iowa 1338, 212 N.W. 154 (1927), a boy was injured by an abandoned dynamite cap. In considering defendant's duty the court applied the following rationale:

"Whatever might happen that was within the range of prudent human foresight it was in duty bound to guard against. Its liability, if any, must rest upon some violation of this duty which was the proximate cause of the injury. The duty of one employing explosives to exercise the highest degree of care for the safety of others is everywhere recognized and sustained by authority." (202 Iowa at 1342, 212 N.W. at 156)

See also Lone Star Gas Co. v. Parsons, 159 Okl. 52, 14 P.2d 369 (1932).

The use of the word "certain" in the instruction was unfortunate. It loses prejudicial impact, however, by being coupled with the concept of "easily accessible" devices. If the city knew, or should have known, these were easily accessible to children, then such fireworks were equally accessible to the city to find and remove. In addition, the court told the jury all instructions were to be read and considered together. We have held this to be the rule. Tilghman v. Chicago & North Western Railway Co., 253 Iowa 1339, 115 N.W.2d 165 (1962). In this case instruction 1 set forth the charges of negligence against the city. Instruction 6 carefully defined "negligence." In instruction 8 the jury was told that the mere fact an accident occurred was not sufficient to show either party negligent, the burden being upon the party making the claim to establish the other was negligent. Considering all the language of instruction 13 and the other relevant instructions, we find no basis to conclude the jury was swayed, misled, or reached its decision through any misapprehension created by use of this particular word. See Matuska v. Bryant, 260 Iowa 726, 150 N.W.2d 716 (1967); Henneman v. McCalla, 260 Iowa 60, 148 N.W.2d 447 (1967).

The remaining objection to instruction 13—that it set out the law of attractive nuisance which had not been pled or proved—is law-related to city's objection to instruction 15, and we treat the two together.

Summarized, instruction 15 told the jury: the ball park was open to the public; when land is held open to the public there is an invitation to the public to enter for the purpose for which it is held open; any member entering for that purpose is an invitee; if Willy entered the ball park for the purpose for which it was held open he was an invitee.

The city objected this instruction was incorrect; the plaintiff was not entitled under this record to an instruction "to the effect that he is an invitee." His admitted purpose in going to the ball park was to locate and discharge fireworks in violation of the law; therefore, objected the city, his purpose was obviously not that for which the premises were held open to the public. This being true, his status could not be that of an invitee. Restatement (Second) of Torts § 332, p. 176.

Implicit in the objection is defendant's rationale that because Willy was not an invitee, and the attractive nuisance doctrine did not apply, he was a trespasser. There-

fore, city's duty was only to refrain from injuring him willfully or wantonly, and to use reasonable or ordinary care to avoid harming him after his presence and peril were known. Harriman v. Incorporated Town of Afton, 225 Iowa 659, 281 N.W. 183 (1938); Davis v. Malvern Light & Power Co., 186 Iowa 884, 173 N.W. 262 (1919). No one disputes that the city, as possessor or occupant of the playground, had the same responsibility as an owner. Fetters v. City of Des Moines, 260 Iowa 490, 149 N.W.2d 815 (1967).

The application of rigid common-law rules (which turn the liability of the land possessor on the status of the person harmed) in the context of our complex, industrialized and heavily populated society has come under increasing criticism. The reluctance of courts to apply the more basic rule imposing the duty of using reasonable care under all the circumstances has been said to flow out of the special privilege accorded the occupation of land in England and America, and the overtones bound up with the values of a social system that traces much of its heritage to feudalism. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); 2 Harper and James, The Law of Torts § 27.1, p. 1432 (1956). One authority notes this system has incurred the displeasure of legal writers, several courts, and has started on its way to discard. W. Prosser, Law of Torts § 58, p. 357 (4th ed. 1971).

The United States Supreme Court in Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630–631, 79 S.Ct. 406, 410, 3 L.Ed.2d 550, 554–555 (1959), refused to apply these common-law rules relating to the liability of a possessor of land to the law of admiralty, stating,

" * * * [M]odern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards 'imposing on owners and occupiers a single duty of reasonable care in all the circumstances.' "

We observe common-law classifications of injured parties have proliferated in our own decisions. Greenwell v. Meredith Corporation, 189 N.W.2d 901 (Iowa 1971) (business invitee); Sullivan v. First Presbyterian Church, Waterloo, 260 Iowa 1373, 152 N.W.2d 628 (1967) (licensee, invitee); Hanson v. Town & Country Shopping Center, Inc., 259 Iowa 542, 144 N.W.2d 870 (1966) (public invitee, business visitor); Mann v. Des Moines Ry. Co., 232 Iowa 1049, 7 N.W.2d 45 (1942) (trespasser, licensee, bare licensee, mere licensee, licensee by express invitation, licensee by implied invitation).

The California Supreme Court, speaking in Rowland v. Christian, 69 Cal.2d 108, 70 Cal.Rptr. 97, 104, 443 P.2d 561, 568 (1968), said:

" * * * [W]e are satisfied that continued adherence to the common law distinctions can only lead to injustice or, if we are to avoid injustice, further fictions with the resulting complexity and confusion. We decline to follow and perpetuate such rigid classifications. The proper test to be applied to the liability of the possessor of land * * * is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative."

Other recent decisions adopting the same rule are Mile High Fence Company v. Radovich, 28 Colo.App. 400, 474 P.2d 796 (1970), aff'd, 489 P.2d 308 (Colo.1971); Pickard v. City and County of Honolulu, 51 Hawaii 134, 452 P.2d 445 (1969). Still other jurisdictions have sharply blunted the cutting edge of the common-law distinctions. Louisville Trust Company v. Nutting, 437 S.W.2d 484 (Ky.1969); Potts v. Amis, 62 Wash.2d 777, 384 P.2d 825 (1963). See also Annot., Premises Liability—Claimant's Status, 32 A.L.R.3d 508.

The common-law distinctions have also been modified in cases involving injuries to trespassing children, caused by an artificial condition upon the land. See Jones v. Billings, 289 A.2d 39 (Me.1972) and cases from 27 other jurisdictions cited in 16 A. L.R.3d, pages 118 through 124, most of which adopt the criteria for testing the land possessor's liability laid down in Restatement (Second) of Torts § 339, p. 197:

"§ 339. Artificial Conditions Highly Dangerous to Trespassing Children

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

It is in the trespassing child situation that the majority of jurisdictions invoke the rule articulated by the California court in Rowland v. Christian, supra. See comment "b" to Restatement § 339, supra, where the following language is found:

"It is now recognized by most of the courts that the basis of the rule is merely the ordinary negligence basis of a duty of reasonable care not to inflict foreseeable harm on another, and that the fact that the child is a trespasser is merely one of the facts to be taken into consideration."

Prosser points out "[t]he Restatement rule is stated in terms of liability to trespassing children; but it is quite clear that the principle is not limited to them. In any case where the child could recover if he were a trespasser, he can recover at least as well when he is a licensee or invitee on the premises." W. Prosser, Law of Torts § 59, pp. 366–67 (4th ed. 1971).

■ Therefore, in the case before us, whether Willy was a trespasser, licensee or invitee was not controlling. It follows instruction 15 could not have prejudiced the city.

■ The so-called attractive nuisance doctrine was merely another attempt to ameliorate the harsh result of the trespasser status when applied to children. W. Prosser, Law of Torts § 59, pp. 364–66 (4th ed. 1971). Most jurisdictions now agree the element of "attraction" is important only insofar as it may mean the presence of the child is to be anticipated, and that the basis of liability is merely the foreseeability of harm to the child. Dezendorf Marble Company v. Gartman, 333 S.W.2d 404 (Tex.Civ.App.1960) aff'd, 161

Tex. 535, 343 S.W.2d 441 (1961); W. Prosser, Law of Torts § 59, p. 366 (4th ed. 1971). It is in this sense, and not in the trespasser vis-à-vis invitee sense, that the element of "attraction" was rightly incorporated in instruction 13.

Tested against the objections raised, instruction 13 appropriately defined the city's duty. It and other instructions, taken together, set out the essential aspects of Restatement (Second) of Torts § 339, which principle we now adopt.

Under the facts of this case the jury could have found the place where the artificial condition was created (explosive devices left in an unguarded playground) was one the possessor knew children would frequent. The jury could also have found this possessor should have realized such devices involved an unreasonable risk of serious bodily harm to such children who would not realize the risk of meddling with these explosives.

Perceptible movement toward the rule we now adopt was apparent in Appling v. Stuck, 164 N.W.2d 810 (Iowa 1969). Although we rejected application of the attractive nuisance doctrine, we nonetheless refused to apply the trespasser rule to a child, stating, in 164 N.W.2d at pages 813–814:

"Under the allegations of the petition and our present problem the status of plaintiff on defendants' premises is of little, if any, importance. We do not determine his status.

\* \* \* \* \* \*

"Mr. Justice Cardozo in Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99, 100, 59 A.L.R. 1253 succinctly stated the rule, 'The risk reasonably to be perceived defines the duty to be obeyed, \* \* \*.' "

When the Restatement rule is applied, neither instruction 13 nor 15 provide any ground for error under the objections raised below.

IV. The city asserts trial court abused its discretionary power in failing to grant a new trial.

■■■ It is urged verdicts of $75,000 for Willy and $8500 for his father were excessive and resulted from sympathy, passion and prejudice. Total medical-related expense was $3573.10. Willy was right handed before the injury. As a result of the explosion, he lost 90 percent of his right hand. At time of trial, his life expectancy was over 54 years. We will not detail the extensive evidence relating to his operations, hospitalizations, pain, humiliation, and disability resulting from his injury. We hold the verdicts were not excessive under this record. See Ives v. Swift & Company, 183 N.W.2d 172 (Iowa 1971); Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632 (Iowa 1969).

■■■ Further post-verdict record was made concerning notations written by the jury foreman on instructions during jury deliberations. It is claimed these were fatally inconsistent both with the verdict and the answer to an interrogatory. Such notations were, at the most, surplusage. Cavanaugh v. Jepson, 167 N.W.2d 616 (Iowa 1969). Trial court properly held such matters inhere in and cannot be employed to impeach the verdict. Rasmussen v. Thilges, 174 N.W.2d 384 (Iowa 1970).

■■■ At the city's request special interrogatories were submitted to the jury, relating to its cross-petition against the Chamber of Commerce. The jury responded the Chamber was negligent, but that such negligence was not the proximate cause. We do not find this result to be so inconsistent with the record and the instructions as to justify setting the verdict aside.

Trial court did not abuse its discretion in refusing to grant a new trial.

Affirmed.

All Justices concur, except LeGRAND, MASON and RAWLINGS, JJ., who dissent from Division III but concur in the result.

LeGRAND, Justice (dissenting from Division III but concurring in the result).

I dissent from Division III, but concur in the result because I believe the trial court properly instructed the jury on plaintiff's status and should be affirmed. The majority apparently feels this verdict can be saved only by abandoning all distinctions based on the status of one who enters upon the property of another and is injured by some negligent act or condition. I disagree, and I find it ironic the majority would ascribe such an unreasonable, inflexible, and unrealistic interpretation to plaintiff's right to enter this public recreational area in the same opinion which decries the "rigidity" of the doctrine under which a plaintiff may recover for injuries suffered while on another's property.

I think the trial court properly permitted the jury to determine if plaintiff was an invitee under the facts shown here.

According to the record, the city maintained and operated an area used primarily as a baseball field. It was for public use and was open and unfenced on all sides. The majority finds as a matter of law this minor plaintiff could not qualify as an invitee unless he entered it intending to use the field to play baseball. It is inconceivable this was the limit of the invitation extended by the city to the public. Would plaintiff have been a trespasser if he had gone there to fly a kite? Or to play football? Or, as the jury could well find was the case, just to *play*?

The majority has found in Division I plaintiff was not negligent as a matter of law in going on the field for an illegal purpose—to discharge firecrackers in violation of a statute. Accepting this as correct—and I believe it is—I find plaintiff's conduct and his entry upon the public field

entirely within the possible scope of the purpose for which the area was open to the public. I say "possible" because the jury could have found otherwise; but the circumstances clearly raised a jury question on the issue.

Since the case was pled, tried, submitted and decided on this issue, one would suppose our review would be determined accordingly; but not so.

The majority first holds as a matter of law plaintiff could not be an invitee under the facts shown here. It then nevertheless affirms the trial court on a theory of its own—one which was not relied on by either party in the trial court and one which, until now, has not been in the case. The majority professes to adopt rule 339, Restatement, Second, Torts, relating to trespassing children. I question that it does; but even more I question that it *could* under this record. The conditions under which that rule comes into play are entirely absent, both as to pleading and proof. It was not the theory upon which the matter was tried by *either* party. The instructions to the jury are entirely silent on the circumstances which must be shown to bring a trespassing child within its protection. Cf. Jones v. Billings (Maine 1972) 289 A.2d 39, 41–43.

I believe litigants are entitled to have a case decided on the issues made up in the trial court. Not only does the majority opinion fail to do this, it also resorts to pure speculation concerning what the outcome *would* have been if the matter had been tried on a *different* theory—the "trespassing child" doctrine of rule 339, supra.

The majority's conclusion as a matter of law that the jury would have reached the same result under a rule 339 instruction on *trespassers* as it did under an *invitee* instruction usurps the function of the jury in finding the existence of the facts necessary to make that rule applicable. The record is devoid—completely—of evidence to justify any such conclusion.

If defendant is to lose its lawsuit, it should be on a theory it has had an opportunity to meet and resist. It has not been afforded that right on the grounds relied on by the majority.

I have already indicated I believe the instruction allowing the jury to decide if plaintiff was an invitee was correct and the jury's determination in his favor fully supported by the record. Since this is the result the majority reaches, even though it does so by what I deem to be an erroneous route, I can and do concur in the result.

MASON and RAWLINGS, JJ., join in this dissent from Division III, but concur in the result.