**Dennis D. PIERCE, Appellant,**

v.

**Ludwig SEIDL, Jr., Appellee.**

No. 55081.

Supreme Court of Iowa.

Feb. 21, 1973.

Leighton A. Wederath and James Furey, Carroll, for appellant.

Wunschel & Schechtman, Carroll, for appellee.

Heard by MOORE, C. J., and Le-GRAND, REES, UHLENHOPP and McCORMICK, JJ.

REES, Justice.

This appeal is from an order of trial court sustaining defendant's motion for

judgment notwithstanding verdict following trial to jury and rendition of verdict in favor of plaintiff in the amount of $15,000 for personal injury.

Defendant, father-in-law of plaintiff, is a blacksmith. At and prior to the time of the happening referred to herein, he was employed, but, on his own time, he had constructed a homemade tractor which embodied a 22-horsepower International engine which he had removed from a combine and the transmission of a three-quarter ton Ford four-speed vehicle. The power was transmitted from the engine to the transmission by a drive shaft about a foot and one-half to two feet long, with two universal joints which were lubricated by Zerk fittings.

The machine was equipped with two seats, side by side, the operator's or driver's seat being on the left, and a seat on the right to accommodate a passenger. The seats were of the type usually found on horse-drawn cornplanters. The machine had been designed by defendant and built by him at his home in Dedham, although it appears plaintiff had, from time to time, assisted defendant in some of the work of assembling the machine. Plaintiff had no mechanical training, and had never worked as a mechanic.

The incident in which plaintiff sustained his injury occurred on December 14, 1969. Earlier that day plaintiff had gone from his home in Coon Rapids to the home of defendant (his father-in-law), and they had gone rabbit hunting together. When they returned to defendant's home, defendant asked plaintiff to help him work on the tractor. Defendant did some welding on the machine, and plaintiff held the parts in place for defendant while he was making the weld. The machine had been sitting outdoors before they commenced work on it, and both parties pushed it into a shed. After the work was done, defendant suggested they take a ride and try it out.

The parties then seated themselves on the machine, defendant on the left, or operator's seat, and plaintiff on the right side. The machine was not equipped with floor boards covering the drive shaft which was below and between the two seats. Plaintiff testified that when the parties were seated on the machine (or immediately thereafter) defendant said to plaintiff, "Watch out where you put your feet". Plaintiff was wearing a pair of Levis and a pair of insulated boots 12 or 14 inches in height. The boots were of a slip-on type with three eyelets at the top which were secured by shoelaces. Admittedly, his shoelaces were untied, but he testified his trouser leg was covering up the area of the shoelace.

After the parties started out on the machine and had gone about a block and one-half, plaintiff's left leg became entangled in the drive shaft and it appears his foot was almost severed from the leg at the ankle. He was hospitalized for three weeks continuously, and was later treated on an out-patient basis. He was unable to work for a period of eight months.

After plaintiff had rested his case, defendant's counsel dictated into the record a motion to direct verdict, asserting the vehicle upon which plaintiff was riding was a motor vehicle as defined by section 321.-1(2), The Code, 1966; that the burden was on the plaintiff to produce evidence to establish his status as a passenger on the machine was other than that of a guest, which plaintiff had not done; or that plaintiff was required, in order to recover against defendant, to show either recklessness or intoxication on the part of defendant. In the second division of his motion to direct, defendant asserted plaintiff, having been aware of the design of the drive shaft of the vehicle, and having in fact been warned by defendant of its presence and location, was precluded from recovering judgment against defendant on the grounds that he had assumed the risk of injury as a matter of law.

In ruling on defendant's motion to direct, the court indicated it was strongly inclined to the view the first ground of the motion was good, but that it had some

questions about the merit of the second division of the motion, but would permit the jury to consider the matter, and overruled both grounds of defendant's motion.

The motion to direct was renewed by defendant after all parties had rested, and was again overruled by the court.

After rendition of verdict in favor of plaintiff, defendant filed his motion for judgment notwithstanding the verdict, in which he asserted; he was entitled to a directed verdict at the close of plaintiff's evidence and at the close of all of the evidence; that plaintiff's injuries were sustained while he was riding as a guest-passenger on a motor vehicle owned and operated by defendant; and that plaintiff had failed to plead or prove either the recklessness or intoxication of the defendant. He further asserted as a second ground that plaintiff had assumed the risk of injury, and that the court should have directed a verdict as a matter of law. The court sustained both grounds of defendant's motion for directed verdict, and this appeal ensued.

■ I. Plaintiff did not attempt to prove, nor did he plead, defendant was in any manner negligent in the operation of the motor vehicle upon which the plaintiff was riding at the time he sustained his injuries. Plaintiff's approach to the problem was based on a theory that plaintiff's injuries were not resultant from the operation of the vehicle, but from its design and inherently dangerous characteristics. That the tractor is, and was, a motor vehicle seems to have been conclusively established by our pronouncements in Hessler v. Ford, 255 Iowa 1055, 125 N.W.2d 132. At page 134 of 125 N.W.2d, this court said,

> "Farm tractors by definition are motor vehicles. 'Farm tractor' means every motor vehicle designed and used primarily as a farm implement for drawing plows, mowing machines, and other implements of husbandry." (citing section 321.1(7), The Code).

The record establishes the tractor upon which plaintiff was riding was equipped to handle a five-foot blade, or other attachments, and we must conclude it is, and was, a motor vehicle within the contemplation and meaning of the statute.

We have reviewed the authorites cited by plaintiff in support of his position, but are unwilling to conclude the guest statute is not applicable in this case. The record does not support a contention of the plaintiff that he placed himself on the vehicle reluctantly and at defendant's insistence, but we observe further that even if such were established by the record, plaintiff's obligation to plead and prove the reckless operation of the vehicle by defendant, or defendant's intoxication, still was incumbent upon the plaintiff.

■ The fact the evidence showed the owner of the vehicle (the defendant here) had knowledge of the condition of the vehicle and that the drive shaft with which plaintiff's foot came into contact, posed a danger to his passenger is insufficient to establish reckless operation within the meaning of the guest statute. See Stanbery v. Johnson, 218 Iowa 160, 254 N.W. 303, 306; Fleming v. Thornton, 217 Iowa 183, 251 N.W. 158, 159.

Trial court was correct in concluding plaintiff was precluded from recovery by section 321.494, The Code, 1966, and in sustaining defendant's motion for judgment notwithstanding verdict in that regard.

II. We deem it unnecessary to pass upon the second question presented by defendant's motion for judgment notwithstanding the verdict, i. e., that plaintiff had assumed the risk in becoming a passenger on defendant's vehicle.

We are mindful of the pronouncement of this court in Rosenau v. City of Estherville, 199 N.W.2d 125, in which this court said, at page 133,

> "We thus abolish assumption of risk as a separate defense in all cases in

which contributory negligence is now available as a defense. We retain assumption of risk as a defense in other cases.

"It follows trial court committed no error in failing to instruct on the assumption of risk doctrine in this case.

"Our above holding is applicable to all cases tried hereafter. Cases already tried in which the doctrine of assumption of risk was appropriately submitted to the jury under our prior decisions will not necessarily be reversed."

The opinion in *Rosenau* was filed in this court on June 29, 1972. The verdict in the matter before us was returned by the jury on January 27, 1971.

The trial court in the case before us instructed both on the elements of contributory negligence and assumption of risk. Trial court was correct in submitting the doctrine of assumption of risk under our prior decisions.

We find no reversible error, and affirm the trial court.

Affirmed.